## LOUIE et al, *Appellants,*
### *v.*
## STATE OF OREGON et al, *Respondents.*
### (No. 77-4850, CA 10606)
586 P2d 364

David Brewer, Eugene, argued the cause for appellants. On the brief were Richard Larson and Sahlstrom & Lombard, Eugene.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

This is an action alleging negligence and breach of contract against the State of Oregon, the Oregon Fair Plan Association, and individual defendants. The Oregon Fair Plan Association is an association established by ORS Chapter 735. Defendant Sue Shelley is an employee and the other individual defendants are directors of the Association. The trial court, on motion of the state, struck the material allegations of the complaint on grounds of immunity under ORS 735.145.[1] Plaintiffs refused to plead over and judgment was granted for all the defendants. Plaintiffs appeal. The issue presented is the scope of the immunity under ORS 735.145, which provides:

> "No person shall have a cause of action against the association or its employes or servicing facilities, any member of the board, or the commissioner or his employes for any action taken by them in carrying out this chapter."

ORS Chapter 735 was enacted in 1971, Oregon Laws 1971, Chapter 321 (HB 1377, introduced at the request of the Insurance Division, Department of Commerce), for the purpose of assuring the availability of property insurance to owners who cannot obtain such insurance through the normal market, and allocating the risk among member insurance companies. ORS 735.015. Pursuant to the plan of operation required by ORS 735.085 and 735.095, the Association, upon application of an owner, inspects the property and then determines whether to accept the risk. If the risk is deemed acceptable, the Association notifies the applicant of the acceptance and the amount of the premium. The plan further provides:

> "The total one-year premium, in the form of cash, money order, cashier's check or certified check from the assured or a check drawn on the account of a licensed agent must be received by the Association before coverage under this plan may become effective. The effective

---

[1]The state also contended that it was immune under the Tort Claims Act, ORS 30.260-30.300, but we do not reach that issue.

date of coverage, either under a binder or a policy, shall not be earlier than 12.01 a.m. on the next business day after the total premium is received by the Association. An effective date later than this may be designated by the applicant." Oregon Fair Plan Association Plan of Operation § XII(8).

The relevant facts alleged in the complaint are that plaintiffs, who own a cafe, had obtained insurance on their property through the Association in the amount of $57,227. On November 16, 1976, plaintiffs made a request to an agent of Kinkade Insurance, Inc. (Kinkade), a member of the association, for $22,500 additional coverage. Defendant Shelley notified Kinkade that the additional coverage "would be provided" upon receipt of $400 for the premium. The check for that amount was immediately delivered to Kinkade and mailed to the Association. On November 28, 1976, plaintiffs' premises were damaged by fire in the amount of $74,247. Defendants have refused to pay plaintiffs damages under the requested additional coverage, and plaintiffs have sued for the difference.

The immunity expressed in ORS 735.145 is on its face complete and unambiguous. However, an ambiguity exists by virtue of ORS 735.075, which enumerates some of the powers of the Association, including that "[t]he association may * * * (3) [s]ue or be sued." Arguably the word "may" merely empowers the Association with discretion to waive the immunity under ORS 735.145. A more likely construction is that the phrase "sue or be sued" was intended to give the Association corporate powers. In providing for such powers, the use of the word "shall" instead of "may" would have been inappropriate.

■ The legislative history indicates that the purpose of ORS 735.145 was to provide an immunity "very much like" that under the Tort Claims Act, ORS 30.260-30.300. *See* Testimony of Insurance Commissioner Bateson before Subcommittee A of the House Committee on Urban Affairs, March 2, 1971, Tape 3, Side 2,

Counter No. 388 *et seq.* [hereinafter cited as Testimony] Indeed, it was suggested by the Insurance Commissioner that Section 16, now ORS 735.145, could be amended to provide that the Association have "the same liabilities and immunities as a governmental agency under the Tort Claims Act." *See* Testimony, *supra.* During the legislative deliberations, Section 16 of HB 1377 was amended to delete immunity for member insurers and their agents, but the suggestion of incorporating the immunity of the Tort Claims Act was not acted upon. We conclude that the tort immunity afforded by ORS 735.145 is complete.

■ With respect to contract liability, the Insurance Commissioner was questioned by members of the legislature as to whether there was any conflict between Section 16, ORS 735.145, and the "sue or be sued" language in Section 9, ORS 735.075. He replied to the effect that the purpose of the "sue or be sued" language was to make it clear that the Association could be sued on its contracts, and that Section 16 pertained only to tort liability. *See* Testimony, *supra.* Logically, it seems doubtful that the legislature intended that ORS 735.145 encompass contract liability. One of the other powers of the Association enumerated in ORS 735.075 is to "[n]egotiate and become a party to such contracts as are necessary to carry out this chapter." ORS 735.075(4). Under ORS 735.065 the agency is specifically authorized to enter into reinsurance contracts. A concomitant of the power to contract is the capacity to be sued for breach thereof. We conclude that ORS 735.145 provides only for immunity from tort liability.

■ In Count 4 of plaintiffs' complaint they allege:

"Defendants State of Oregon, Oregon Fair Plan, its directors and Sue Shelley impliedly promised by their previous conduct that any application for extensions of insurance coverage would be duly considered and acted upon, and accepted upon tender of premium within a reasonable time. Defendants, by misplacing said check,

[ 53 ]

intentionally or negligently, breached said promise to Plaintiffs' damage in the sum of $17,020.00."

The terms "intentionally" and "negligently" are surplusage. It is also not clear whether plaintiffs are alleging a breach of contract arising out of the defendants' prior conduct, or as a result of the actions of defendant Shelley. Nonetheless, while Count 4 of plaintiffs' complaint is not a model of good pleading, we are satisfied that plaintiffs have alleged a breach of contract and that the motion striking this portion of the complaint was improperly allowed. The plaintiffs' other three counts in tort were properly stricken.

Affirmed in part; reversed in part and remanded.