2003-NMCA-134

80 P.3d 470

**REX, INC., d/b/a Rex's Mobile Homes, Appellant–Petitioner,**

v.

**The MANUFACTURED HOUSING COMMITTEE FOR THE STATE OF NEW MEXICO, Appellee–Respondent.**

**No. 22,935.**

Court of Appeals of New Mexico.

Sept. 12, 2003.

James A. Chavez, James A. Chavez, P.C., Albuquerque, for Petitioner.

Patricia A. Madrid, Attorney General, Zachary Shandler, Assistant Attorney General, Santa Fe, for Respondent.

## OPINION

PICKARD, J.

{1} We granted Rex, Inc.'s (Rex) petition for certiorari to review the district court's order affirming the Manufactured Housing Committee's decision to attach Rex's consumer protection bond in order to partially satisfy a judgment against Rex. We discuss (1) whether collateral estoppel can be used in an administrative proceeding to estop a party from rearguing an issue litigated in district court, (2) whether the notice of the administrative hearing was adequate under the facts of this case, and (3) whether the complaint filed with the Manufactured Housing Committee was adequate. We affirm.

## FACTS

{2} The history of this case began with an action brought by consumers, Mr. and Ms. Shufelberger, under the Unfair Practices Act, 1978 NMSA §§ 57–12–1 to –22 (1967, as amended through 1999) against Rex. That action (the UPA action) resulted in a judgment against Rex for damages, attorney fees, and costs. This Court upheld that judgment. The Shufelbergers then, through their attorney, sent a letter to the Manufactured Housing Committee (the Committee) requesting that Rex's consumer protection bond be forfeited to them in partial satisfaction of their judgment. The Committee served Rex with a Notice of Contemplated Action, informing Rex that the Committee had sufficient evidence, if not rebutted or explained, to order the attachment and disbursement of the bond. Rex appeared twice before a hearing officer, who ultimately recommended to the Committee that it order forfeiture of Rex's consumer protection bond. The hearing officer based most of his findings on the judgment of the district court in the UPA action, determining that the doctrine of collateral estoppel applied, precluding Rex from relitigating the dispositive issue of misrepresentation to the consumers. *See* 1978 NMSA § 60–14–6(A)(4) (1983) (authorizing the Committee to attach a consumer protection bond if the licensee engaged in misrepresentation or false promises). At a subsequent meeting, the full Committee adopted the findings of the hearing officer and ordered the consumer protection bond attached and disbursed to the Shufelbergers. The Shufelbergers are not parties to this appeal.

{3} Rex appealed the Committee's decision and order to the district court, which affirmed the Committee. Rex then peti-

tioned this Court for certiorari, which we granted. Rex argues that the Committee erred in applying collateral estoppel, which denied it a full evidentiary hearing before ordering its bond attached and disbursed. Rex also argues that the Notice of Contemplated Action was inadequate and that the Committee did not have jurisdiction to take administrative action at all because the consumers themselves did not file the complaint. We affirm the district court.

## DISCUSSION

■ {4} We review an administrative order using the same standard as did the district court sitting in its appellate capacity. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 16, 133 N.M. 97, 61 P.3d 806. We must determine whether the Committee's order was arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or otherwise not in accordance with law. NMSA 1978, § 39-3-1.1(D)(1999). On appeal we may correct the Committee's misapplication of the law. *See Rex, Inc. v. Manufactured Hous. Comm.*, 119 N.M. 500, 504, 892 P.2d 947, 951 (1995). Rex primarily argues that the findings and recommendations of the hearing officer and the order of the Committee were not in accordance with law.

### 1. Collateral Estoppel

■ {5} In order for a court or agency to apply collateral estoppel, the moving party must show that (1) the party to be estopped was a party or privy to the prior proceeding, (2) the cause of action in the present case is different from the cause of action in the prior proceeding, (3) the issue was actually litigated in the prior proceeding, and (4) the issue was necessarily determined in the prior proceeding. *Id.* Our Supreme Court has also adopted the doctrine of offensive collateral estoppel, which may be applied "when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether [the] plaintiff was privy to the prior action." *Silva v. State*, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987), *limited on other grounds by Archibeque v. Moya*, 116

N.M. 616, 618, 866 P.2d 344, 346 (1993). We must also determine, if these elements are met, that the non-moving party had a full and fair opportunity to litigate the issue in the prior proceeding. *Rex, Inc.*, 119 N.M. at 504, 892 P.2d at 951.

{6} Rex argues that the Committee erred in relying only on the district court's judgment in the UPA action when it ordered the attachment and disbursement of the bond. Rex construes the proceeding to attach its consumer protection bond as an investigation of the reported defects in the manufactured home, which in turn requires the Committee to conduct a full investigation of the Shufelbergers' complaint pursuant to the Manufactured Housing Act, NMSA 1978, §§ 60–14–1 to –20 (1975, as amended through 1999)(MHA), and the rules promulgated thereunder. Essentially, Rex is arguing that the Committee in this instance is acting to vindicate a public interest, investigating manufactured home defects pursuant to the MHA, and therefore does not have privity with the Shufelbergers, making the Committee's reliance on the preclusive effect of the UPA action legally incorrect. We conclude that Rex misconstrues the nature of the Committee's administrative proceeding.

{7} Rex does not dispute that an issue litigated in district court can have preclusive effect on that issue in subsequent administrative proceedings. Rex also has no dispute over the judgment of the district court in the UPA action, upheld by this Court, and no dispute that it had a full and fair opportunity to defend itself. It argues only that the element of privity was not met because the Committee was acting to vindicate a public interest.

{8} In the UPA action, the district court found that Rex violated the Unfair Practices Act by "failing to deliver the quality of goods and services contracted for, and by using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact and so deceiving or tending to deceive." Subsequent to the UPA action and its affirmance by this Court, the Committee convened a hearing to investigate a complaint sent by the Shufelbergers' attorney which requested "the [Committee's] administrative

action to recover against the dealer's consumer protection bond(s), if still in place, for Rex, Inc., following judgment in the referenced unfair trade practices case." The Notice of Contemplated Action sent prior to the hearing notified Rex that the Committee contemplated that, pursuant to Section 60–14–6 and to 14.12.2.28(C) NMAC, it would be justified in ordering the attachment and distribution of the consumer protection bond to the Shufelburgers in satisfaction of the judgment against Rex. Thus, contrary to Rex's assertion, the purpose of the hearing was not to investigate the Shufelbergers' complaints involving the defects in the manufactured home, but to determine whether or not the Committee could attach Rex's consumer protection bond and disburse it to the Shufelbergers in partial payment of the judgment in the UPA action.

{9} Accordingly, the Committee in this instance was acting to vindicate the private interest of the consumers, that of attaching a consumer bond in order to secure payment of a judgment to particular consumers. Our Supreme Court has determined in a similar context that, "when an agency acts on behalf of an individual claimant and seeks individual relief, it is in privity with that claimant[.]" *Rex. Inc.*, 119 N.M. at 509, 892 P.2d at 956 (determining that collateral estoppel applied, precluding the Committee from taking action to further protect a consumer who had partially prevailed in a prior arbitration against the same defendant). The fact that the statute and regulations would have permitted the Committee to expand the focus of its action to include vindicating a public interest does not mean that it did so in this case.

{10} Furthermore, the doctrine of offensive collateral estoppel applies, because Rex had a full and fair opportunity to defend the issues of misrepresentation (the UPA violation) and the loss suffered by the consumers in the UPA action. Therefore, Rex is also precluded from litigating these issues again in the subsequent Committee proceeding. *See Silva*, 106 N.M. at 476, 745 P.2d at 384.

{11} To the extent that Rex is arguing that the Committee did not follow the mandate of the MHA or the rules promulgated thereunder in attaching the consumer bond and ordering disbursal of the bond amount, we find no error in the Committee's proceedings. The purpose of the MHA is to protect purchasers and users of manufactured homes. Section 60–14–3. The Act authorizes the Manufactured Housing Division, with the approval of the Committee, to require consumer protection bonds to indemnify for losses sustained by consumers. Section 60–14–6. The MHA allows the Committee to attach and disburse the consumer bonds for losses sustained by any person damaged "by misrepresentation or the making of false promises through the advertising or the agents of a licensee." Section 60–14–6(A)(4), (C). The applicable rule provides for a hearing before the Committee prior to the attachment and disbursement of a consumer protection bond and allows for the Committee to attach a bond without taking any action against the license. 14.12.2.28(C) NMAC.

{12} It is undisputed that the Committee has the authority to order Rex's consumer protection bond to be attached and disbursed to a consumer for losses sustained as a result of misrepresentation. Section 60–14–6(A)(4). Thus, pursuant to the MHA, the elements to be proved at the proceeding to attach a bond are (1) the existence of the bond, (2) losses sustained by the consumer, and (3) the losses occurring by reason of misrepresentation. Section 60–14–6(A); 14.12.2.28(C) NMAC. It is also undisputed that the district court in the UPA action found that Rex had violated the UPA by "failing to deliver the quality of goods and services contracted for, and by using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact and so deceiving or tending to deceive." That court ordered Rex to pay a judgment to the Shufelbergers for their losses sustained as a result of the UPA violation. The hearing officer had documentary proof of the bond. All three elements of the statute are met. We see no error in the Committee's use of collateral estoppel on the issue of misrepresentation and loss by the consumers, and we determine that the Com-

**538**

mittee correctly fulfilled its mandate pursuant to the statute and the rules.

## 2. Notice and Right to an Evidentiary Hearing

{13} Rex argues that the Notice of Contemplated Action did not conform to Manufactured Housing Division's regulations and the Uniform Licensing Act (ULA). *See* NMSA 1978, § 61–1–4 (1993) (outlining notice requirements for proceedings investigating complaints against licensees). Rex also argues that it did not receive a fair, adjudicative-style hearing, which is required by the ULA. *See* NMSA 1978, § 61–1–3 (1993) (guaranteeing a right to notice and an opportunity to be heard before the board has authority to take action against a licensee).

{14} There is no statute or rule that governs the process under which the Committee can attach a consumer protection bond. The ULA provides for a hearing in fourteen enumerated instances, none of which is the attachment of a bond. *See* § 61–1–3(A) to (N). The applicable rule simply guarantees a hearing before a bond may be attached. *See* 14.12.2.28(C) NMAC. The hearing officer acknowledged that the ULA did not apply, but he used the ULA as guidance in conducting the hearing. Because there is no precise statutory guideline for this particular proceeding and because due process requires adequate notice and a hearing before the State can take action seeking remuneration against a licensee, we must analyze the sufficiency of the notice and hearing under a constitutional due process analysis.

{15} "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks and citation omitted). We must consider and balance three factors: (1) the private interest affected, (2) the risk of an erroneous deprivation of the interest with the procedures used, and (3) the government's interest, including the fiscal and administrative burdens of providing additional procedures. *Id.* at 335, 96 S.Ct. 893.

{16} The private interest here is Rex's consumer protection bond, and the government interest is consumer protection. Both are equally important. Therefore, we must evaluate the risk of erroneous deprivation of the private interest with the procedures used. *Cf. Sandia v. Rivera*, 2002–NMCA–057, ¶¶ 10–11, 132 N.M. 201, 46 P.3d 108 (analyzing the risk of erroneous deprivation prong of the test when the private and government interest appeared equally important).

{17} Rex's first complaint is that its notice was inadequate, specifically because the notice did not inform Rex of its right to subpoena witnesses. Notice must be timely and adequate, detailing the reasons for the deprivation. *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The basis for the contemplated action, indicating the general nature of the evidence, usually constitutes adequate notice. *See Weiss v. N.M. Bd. of Dentistry*, 110 N.M. 574, 580, 798 P.2d 175, 181 (1990).

{18} The Notice of Contemplated Action sent to Rex cited the statute and the rules the Committee relied upon in contemplating the attachment of the consumer bond, contained information about the actual bond, and outlined the general nature of the evidence. The evidence listed in the notice included the findings and judgment of the district court in the UPA action and the memorandum opinion from this Court upholding that judgment. The notice provided Rex with the opportunity to request a hearing and informed Rex that the ULA would govern the procedure. We see no infirmity in this notice. That Rex complains that its right to subpoena witnesses is not specifically enumerated in the notice is unavailing. The hearing officer determined, and we agree, that Rex was not prejudiced by the omission of the right to subpoena witnesses, because the hearing was based upon the judgment and findings of the district court in the UPA action, and Rex did not have the right to relitigate them. Nor did Rex submit to the hearing officer, or to this Court in its brief in chief, any showing of how it was prejudiced absent the attempt to

relitigate the issues decided in the UPA action.

{19}   Rex next complains that it did not receive a fair hearing because the hearing officer relied only upon the district court judgment in the UPA action. As we have discussed above, the purpose of the hearing was to determine whether the Committee could attach Rex's consumer protection bond pursuant to the MHA, the dispositive issues of which were that there was a loss by consumers due to misrepresentation by Rex. We have determined that the UPA action precluded Rex from relitigating these issues at the hearing. As Rex correctly notes, "[t]he issue to be determined by the hearing officer is whether the district court judgment collaterally estops the licensee from contesting the bond attachment." Accordingly, Rex was afforded two hearings to defend this issue, the first on July 19, 1999, and the second on August 19, 1999. Rex was represented by counsel, who presented oral arguments at both hearings, submitted a written response arguing against collateral estoppel, and was afforded an opportunity to supplement the record with additional documentary evidence. We determine that Rex had a full and fair opportunity to be heard on the issue of whether collateral estoppel applied in this action.

{20}   We hold that both the notice and the opportunity to be heard were fundamentally fair and that the administrative proceedings were in full accord with the law. Therefore, the risk of erroneous deprivation was negligible.

### 3. Jurisdiction

{21}   Rex argues that the Manufactured Housing Division did not have jurisdiction over the proceedings because no complaint was filed. Rex appears to argue that because the consumer's attorney, instead of the consumer, filed the letter of complaint, it is contrary to 14.12.2.63(A) NMAC ("A person claiming to be injured by an alleged violation of the [A]ct ... may file with the [D]ivision a written complaint, which states the name and address of the bondholder whose bond has been claimed against and includes a concise statement of the cause of the alleged injury."). This argument exalts form over substance. Rex supplies us no reason to believe that an attorney cannot act on behalf of his clients, and no reason to find that the letter was in any other way deficient. We reject Rex's argument that no complaint was filed. *See Navajo Tribe of Indians v. Hanosh Chevrolet–Buick, Inc.,* 106 N.M. 705, 707, 749 P.2d 90, 92 (1988) (stating that an attorney can bind a client to a settlement agreement).

### CONCLUSION

{22}   We affirm.

{23}   **IT IS SO ORDERED.**

BUSTAMANTE and ROBINSON, JJ., concur.