2004-NMCA-099

96 P.3d 329

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Gina FRANCO, Defendant–Appellant.**

**No. 23,719.**

Court of Appeals of New Mexico.

June 15, 2004.

Certiorari Denied, No. 28,789,
Aug. 3, 2004.

Certiorari Granted, No. 28,791,
Aug. 10, 2004.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, for Appellee.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

VIGIL, J.

{1} Defendant was convicted of one count of possession of a controlled substance (cocaine) and one count of tampering with evidence (cocaine). NMSA 1978, § 30–31–23 (1990); NMSA 1978, § 30–22–5 (2003). She appeals, contending that: (1) fundamental error was committed when the trial court failed to instruct the jury that her presence in the vicinity of the cocaine or her knowledge of the existence or location of the cocaine, is not, by itself, possession; (2) the failure of her attorney to request the instruction on constructive possession or to object to the instruction given by the trial court on constructive possession resulted in ineffective assistance of counsel; (3) there was insufficient evidence to support the two convictions; and (4) her convictions for both possession and tampering with evidence violate her right to be free from double jeopardy. We hold there was no fundamental error, that Defendant received effective assistance of counsel, and that substantial evidence supports the convictions. However, the conviction and sentence for both crimes violates Defendant's double jeopardy rights. We therefore affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

{2} Defendant went to Lawrence Nickerson's (Nickerson) apartment with her boyfriend, and the men started playing dominoes. Defendant ate some shrimp cocktail. She testified she saw a bottle of Tylenol on the table and started playing with it, but Nickerson told her to leave it alone and he took the bottle. She said she then used the bathroom, opened the door a crack and started fixing her hair in the bathroom when the police arrived. When the police came, she had been at the apartment for thirty to forty-five minutes. Defendant does not know if the bottle she handled was the same Tylenol bottle that was later found under the bathroom window.

{3} The police went to Nickerson's apartment in several different vehicles to execute a search warrant for cocaine. This was an efficiency apartment which consisted of one room which served as bedroom, livingroom, and kitchen, with a walled-off bathroom in the corner nearest to the entry door. When the police arrived, there were people out in front of the apartment, and the police, who were seven or eight in number, began screaming, "Get on the ground. We're the police. We have a search warrant." Eight seconds later, Officer Moyers knocked on the partially open apartment door, yelled loudly that he was a police officer executing a search warrant, waited a few seconds, and entered the apartment. Officer Moyers was the first officer to enter the apartment. The first officer to enter the premises always takes care of the people inside, and immediately goes to the bathroom to make sure evidence is not flushed down the toilet.

{4} Upon entering the apartment, Officer Moyers saw two males sitting on the couch. After ordering them both to the ground, he went directly to the bathroom. The door was partially opened, and he completely opened the door. He saw Defendant standing between the toilet and the bathroom window facing him, towards the door. Officer Moyers pulled her out of the bathroom and put her on the ground next to the bathroom door. He then looked into the toilet. There was no contraband in the toilet, and it was not running, so he concluded it had not been flushed.

{5} Officer Edmondson's testimony was different. He was the second officer to enter the apartment. Upon entering, he saw that Officer Moyers had already secured one individual, and to his left he saw Defendant and a male. When he started securing the male, he said Defendant ran to the bathroom and swung the door shut, but it did not latch. Officer Edmondson testified he saw Defendant in the bathroom through the open door, facing the bathroom window. He did not see anything in Defendant's hand, and he did not see her throw anything outside the window. The police released Defendant after checking to see if she had any warrants.

{6} The police found drug paraphernalia but no cocaine in the apartment. To make sure he did not miss anything in the bathroom, Officer Moyers searched it again. He looked into the water tank of the toilet, but

found nothing. He then looked at the window, which was open, and saw a hole in the screen, large enough for a hand to reach through. He and another officer then walked behind the apartment and the second officer found a Tylenol bottle underneath the bathroom window. The contents appeared to be crack cocaine, which was confirmed by subsequent tests. Defendant was at another apartment nearby, and Officer Moyers motioned to her to return. She did, and she was arrested. Defendant denied throwing the Tylenol bottle through the bathroom window.

{7} Johnny Shaw testified on Defendant's behalf. He and Nickerson were standing in the kitchen area when a warning came from a lookout that police were approaching. Before the police got out of their cars, Nickerson threw the Tylenol bottle through a hole in the kitchen window towards the street, which was in the direction of the bathroom window. This was actually a window where the air conditioner used to be, and the screen on this window was also torn. Nickerson then sat on the couch in the apartment, and the police entered the apartment.

{8} The trial centered on whether Defendant threw the Tylenol bottle out of the bathroom window. The State argued to the jury in its opening statement and closing argument that Defendant committed the crimes by throwing the Tylenol bottle outside the bathroom window. In closing, the prosecutor argued,

> [Defendant] says she was already in the bathroom. And I would just tell you, this whole case revolves on her running away when the police officers come in, because that shows guilty knowledge. That shows, 'I've got dope. I've got to get rid of it.' So if you don't believe that she ran away, that she ran into that bathroom, then you shouldn't find her guilty.

Defendant's attorney countered in his opening statement and closing argument that Defendant was not guilty because she was already in the bathroom when the police arrived, and she did not throw the Tylenol bottle through the window. In his opening statement, Defendant's attorney asserted, "What this boils down to is whether or not the State can prove beyond a reasonable doubt that [Defendant] had that Tylenol bottle in her hand and that she did in fact throw it out the window." On appeal, Defendant continues arguing that she was convicted of possession of the cocaine and tampering with evidence based on the "inference that she had thrown the bottle from the window." We resolve Defendant's arguments on appeal on this basis.

{9} The jury was given the following jury instruction based on UJI 14–3102 NMRA 2002 on the elements necessary to convict Defendant of possession of cocaine:

> For you to find the Defendant guilty of Possession of a Controlled Substance, To-Wit: Cocaine as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The Defendant had Cocaine in her possession;
>
> 2. The Defendant knew it was Cocaine or believed it to be Cocaine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law;
>
> 3. This happened in New Mexico on or about the 14th day of May, 2002.

The jury instruction in UJI 14–3130 NMRA 2004, defining possession states:

> A person is in possession of Cocaine when she knows it is on her person or in her presence, and she exercises control over it.
>
> Even if the substance is not in her physical presence, she is in possession if she knows where it is, and she exercises control over it.
>
> Two or more people can have possession of a substance at the same time.
>
> *A person's presence in the vicinity of the substance or her knowledge of the existence or the location of the substance, is not, by itself, possession.*

UJI 14–3130 (emphasis added). The first sentence of this instruction is designed to be used in a controlled substance case in which possession is an element and is in issue, and one or more of the second, third, and fourth sentences "may" be used, "depending on the

evidence." Use Note to UJI 14–3102. The jury was given this instruction except for the emphasized portion in Instruction No. 6.

## DISCUSSION

### Jury Instructions

■ {10} Defendant argues it was error for the trial court not to include that portion of UJI 14–3130 emphasized above in its instruction. However, Defendant did not object to the instruction as given, and she did not tender a requested instruction of her own which included the omitted phrase. Therefore, we review only to determine whether fundamental error occurred. *State v. Barber*, 2004–NMSC–019, ¶ 8, 135 N.M.621, 92 P.3d 633(2004); Rule 12–216(B)(2) NMRA 2004 (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights). Our Supreme Court recently reiterated that fundamental error,

> must go to the foundation of the case or take from the defendant a right which was essential to h[er] defense and which no court could or ought to permit h[er] to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*Barber*, 2004–NMSC–019, ¶ 8 (quoting *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942)).

{11} Defendant contends that "[t]he only issue for the jury to decide in this case was whether the State had met the legal standard for proving constructive possession[,]" and that "the question of her 'possession' of the contraband was the central issue of the case and the keystone of her defense." She argues she "was charged with 'possessing' drugs that no one saw her with, outside a house that was not hers, found on the ground outside the window to a room where she happened to be doing her hair, in a bottle that could have been there for any amount of time." Defendant continues that "[c]learly this jury was hung up on whether the State had met the legal standard for constructive possession" because during deliberations, it sent a question to the court which asked, "WITH REGARDS TO INSTRUCTION *NO. 6*, WHAT DETERMINES WHETHER 'SHE EXERCISES CONTROL OVER IT.[?]' " and the trial court simply responded, "Please reread the instruction and apply ordinary meanings to the terms in the instruction." Therefore, she concludes, the sentence omitted from the possession instruction addressed a "critical determination akin to a missing elements instruction" and the failure to include it in the instruction constitutes fundamental error under *State v. Mascareñas*, 2000–NMSC–017, ¶ 20, 129 N.M. 230, 4 P.3d 1221. We disagree.

{12} If Defendant's possession of the cocaine was an issue in the case based on her handling of the Tylenol bottle before the police arrived, she would have been entitled to have the jury instructed as set forth in the last sentence of UJI 14–3130. *See State v. Phillips*, 2000–NMCA–028, ¶ 8, 128 N.M. 777, 999 P.2d 421 (stating constructive possession exists when accused has knowledge of drugs and exercises control over them; where accused does not have exclusive control over the premises where the drugs are found, the mere presence of the contraband is not enough to support an inference of constructive possession; additional circumstances or incriminating statements are required). However, this was not the basis on which the case was tried. Instead, the whole issue in the case was whether Defendant threw the Tylenol bottle out of the bathroom window, knowing that the bottle contained cocaine. Under these circumstances, Defendant would not have been entitled to the instruction, even if she had requested it. *See State v. Mireles*, 84 N.M. 146, 148, 500 P.2d 431, 433 (Ct.App.1972) (stating not error to refuse instruction which does not state defendant's theory). Therefore, there was no fundamental error in not giving the omitted sentence from the instruction on possession. *Barber*, 2004–NMSC–019, ¶ 9 (stating in fundamental error analysis for failure to give instruction, first question is whether defendant would have been entitled to instruction had he requested it).

### Ineffective Assistance of Counsel

■ {13} Defendant argues that the failure to object to the instruction on constructive possession, just discussed, and counsel's

failure to tender an instruction containing the last sentence of UJI 14–3130 constitutes ineffective assistance of counsel. We disagree.

{14} Defendant was constitutionally entitled to effective assistance of counsel. *State v. Plouse*, 2003–NMCA–048, ¶ 6, 133 N.M. 495, 64 P.3d 522. She was denied effective assistance of counsel, if she can prove both (1) that her counsel's performance fell below that of a reasonably competent attorney, and (2) that her deficient performance prejudiced the defense. *Id.* However, counsel is presumed competent unless Defendant succeeds in proving both prongs, *id.*, and a prima facie case is not made when a plausible, rational trial strategy or tactic can explain defense counsel's conduct. *Id.* ¶ 17; *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992).

{15} In light of the evidence, which we have summarized above, it was rational for defense counsel to conclude that the best defense to both charges was that Defendant did not throw the Tylenol bottle outside the bathroom window when the police arrived, knowing that cocaine was inside it. Substantial evidence was available and used at trial which, if believed by the jury, would have resulted in an acquittal. We have already stated why Defendant was not entitled to an instruction containing the last sentence of UJI 14–3130 with this defense. Defendant was not denied her right to effective assistance of counsel.

### Sufficiency of the Evidence

{16} Defendant argues that because the evidence could be interpreted to be that multiple drug addicts and dealers stayed in the apartment, and she did not, and they also had access to the yard where the Tylenol bottle was found because all the windows in the apartment were either missing or had holes in them, pure speculation would have to be relied on to prove she exercised dominion and control over the cocaine. Therefore, she concludes, the evidence fails to prove that she possessed the cocaine. We disagree.

{17} In reviewing the sufficiency of the evidence, "[w]e consider the evidence in the light most favorable to the State,

resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Estrada*, 2001–NMCA–034, ¶ 40, 130 N.M. 358, 24 P.3d 793. "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.* (quoting *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)).

{18} During the search of the apartment, police found pipes to smoke crack cocaine and baking soda, which can be used to convert cocaine into crack cocaine, and other crack cocaine paraphernalia. Defendant testified that she was in the apartment for about thirty to forty-five minutes prior to the search, and while in the living room, she saw a Tylenol bottle on the table and played with it. The second officer who entered the apartment testified Defendant ran to the bathroom when he entered, the window to the bathroom was open, and the screen was torn. Police then found a Tylenol bottle outside of the apartment near the bathroom window and it contained crack cocaine. This constitutes substantial evidence that Defendant knew or believed that the Tylenol bottle had crack cocaine inside it, and that she ran to the bathroom and threw the bottle out the window when the police arrived. The evidence was sufficient to prove that Defendant possessed the cocaine.

### Double Jeopardy

{19} Defendant contends that she cannot be convicted of and sentenced for both possession of a controlled substance (cocaine) and tampering with evidence (cocaine) without violating her constitutional right to be free from double jeopardy. *See* U.S. Const. amend. V ("No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb."). We review this claim de novo. *State v. Mora*, 2003–NMCA–072, ¶ 16, 133 N.M. 746, 69 P.3d 256.

{20} The Double Jeopardy clause protects against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1229 (1991). This is a multiple punishment case, and our analysis of

the issue turns on two questions: (1) was Defendant's conduct unitary; and (2) if so, did the legislature intend to impose multiple punishments for such unitary conduct. *Id.* at 13, 810 P.2d at 1233.

{21} Consistent with the instructions on which the verdicts were rendered, we conclude that Defendant's conduct was unitary. As stated above, the central issue for the jury to decide was whether Defendant was in the bathroom without the Tylenol bottle, or whether she ran to the bathroom and threw it outside the bathroom window when the police arrived. By its verdict, the jury determined that Defendant had the Tylenol bottle in her possession when the police arrived, and she immediately ran to the bathroom and threw the bottle outside the window. The facts here do not establish that the illegal acts of possessing the Tylenol bottle when the police arrived on the one hand, and immediately running to the bathroom, and throwing it outside the window on the other hand, are "separated by sufficient indicia of distinctness." *Id.; see Mora*, 2003–NMCA–072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (finding unitary conduct when criminal sexual contact and attempted criminal sexual penetration "all took place within the same short space of time, with no physical separation between the illegal acts"). The State argues that the conduct is not unitary because the evidence can be interpreted to be that Defendant possessed the Tylenol bottle and cocaine contents before the police arrived, and she subsequently tampered with that evidence when the police arrived by throwing the bottle outside the bathroom window. We reject the State's argument, because this was not the basis on which the case was tried, and we will not allow the State to change its position on appeal. *See State v. Hurst*, 34 N.M. 447, 449, 283 P. 904, 904 (1929) (stating party, having acquiesced in theory of the case as presented by the court's instructions to the jury, cannot, after verdict, shift his position and change the theory of the case).

{22} We now determine whether the legislature intended multiple punishments for that unitary conduct. "Absent a clear expression of legislative intent, a court must first apply the *Blockburger [v. United*

*States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] test to the elements of each statute. If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes-punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. A statute is subsumed within another for double jeopardy purposes if all the elements of that statute are included within the elements of the other statute. *Id.* at 9, 810 P.2d at 1229. Tampering with evidence is an offense which can be committed in alternate ways: by "destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." Section 30–22–5(A). We only look to the elements of the offense as charged to the jury and disregard the inapplicable statutory elements in determining whether possession of cocaine is subsumed within tampering with evidence. *Mora*, 2003–NMCA–072, ¶ 21, 133 N.M. 746, 69 P.3d 256. Here, the jury was instructed that in order to find Defendant guilty of tampering with evidence, the State was required to prove to its satisfaction beyond a reasonable doubt that she "threw cocaine out the window" with the requisite intent. Here, Defendant's conviction for possession of cocaine is subsumed within the conviction for tampering with evidence because Defendant possessed the cocaine when she was in the act of throwing it out the window. *See State v. Medina*, 87 N.M. 394, 395, 534 P.2d 486, 487 (Ct.App.1975) (holding that one cannot commit the crime of distribution of marijuana without also committing the crime of possession of that same marijuana). We therefore conclude that the crimes of possession of a controlled substance (cocaine) and tampering with evidence (the same cocaine) are the same for double jeopardy purposes in this case.

{23} In light of the foregoing, we hold that Defendant's conviction and sentence for both possession of a controlled substance (cocaine) and tampering with evidence (the same cocaine) violate Defendant's right to be free from multiple punishments for the same offense.

## CONCLUSION

{24} We hold that Defendant's convictions and sentences for both possession of a controlled substance (cocaine) and tampering with evidence (the same cocaine) based on unitary conduct violates the constitutional prohibition against double jeopardy. We reverse and remand to the trial court with instructions to vacate Defendant's conviction and sentence for possession of a controlled substance (cocaine). We affirm in all other respects.

{25} **IT IS SO ORDERED.**

BUSTAMANTE and KENNEDY, JJ., concur.