2006-NMCA-021

127 P.3d 1126

**Cora MAES, Plaintiff–Appellee,**

v.

**AUDUBON INDEMNITY INSURANCE GROUP, Defendant–Appellant.**

**No. 25,298.**

Court of Appeals of New Mexico.

Dec. 21, 2005.

Dennis T. Sanchez, Dennis Sanchez Law Office, Taos, Maureen A. Sanders, Sanders & Westbrook, P.C., Albuquerque, for Appellee.

Ann Maloney Conway, Deron B. Knoner, Miller Stratvert, P.A., Albuquerque, for Appellant.

**OPINION**

PICKARD, J.

{1}   In this case, we decide whether the FAIR Plan Act, codified at NMSA 1978, §§ 59A–29–1 to –9 (1985, as amended through 1999), provides immunity from a suit for bad faith insurance practices and pre- and post-judgment interest brought by an insured against the servicing insurer of the New Mexico FAIR Plan. We decide that the Act does provide immunity, and we reverse the district court's denial of the insurance company's motion to dismiss.

**BACKGROUND**

**1.  The FAIR Plan**

{2}   Since the 1960s, many states have established FAIR ("fair access to insurance requirements") plans, which are "residual market" property insurance plans.  1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 1:27 (1997) (internal quotation marks omitted).  They are designed to pro-

vide insurance to property owners who are not able to obtain coverage in the normal market because their risks would be unprofitable for an insurance company to voluntarily assume. *Id.*

{3} The New Mexico FAIR Plan was created by the Legislature in 1985, and its purpose is to provide essential property insurance to this category of property owners. The FAIR Plan Act and the Plan's bylaws establish the following facts about the Plan's operations. Section 59A–29–2 authorizes all insurers who write essential property insurance in New Mexico to come together to form a FAIR Plan and to establish a not-for-profit underwriting association, which is known as the New Mexico Property Insurance Program ("NMPIP" or "the Plan"). All insurers who write essential property insurance in the state are required to be members of the Plan. Section 59A–29–3. Each member insurer shares in the Plan's losses and expenditures in an amount proportionate to that member's share of all essential property insurance policies written in the state.

{4} The Plan has a contract with Audubon Indemnity Insurance Group (Audubon), the defendant in this case, under which Audubon acts as the Plan's "servicing insurer." Under the Plan's bylaws, this means that Audubon services all FAIR Plan policies by issuing policies to approved applicants and adjusting claims. However, the bylaws also indicate that the Plan itself reviews all applications and decides whether a policy should be issued and that all premiums are remitted directly to the Plan. Moreover, once claims have been approved, the money paid to insureds comes from the Plan itself. Thus, the Plan completely "reinsures" all policies issued by the servicing insurer, and the servicing insurer acts in an essentially administrative capacity, bearing no actual risk.

{5} The FAIR Plan Act also provides a specific remedy for insureds. Any person "aggrieved by an action or decision of the administrators of the FAIR plan or the underwriting association or of any insurer as a result of its participation" has the right to appeal the action or decision to the Superintendent of Insurance. Section 59A–29–6. The Superintendent must hold a hearing and issue an order approving or disapproving the action or decision. *Id.* The Superintendent's decision may then be reviewed in district court by way of administrative appeal. *Id.*

{6} Finally, the Act provides for immunity under certain circumstances. Section 59A–29–7 states in relevant part:

There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the governing committee or the superintendent or his representative for any action taken by them in the performance of their powers and duties under the FAIR Plan Act.

The dispute in the present case centers around the proper interpretation of this statute.

## 2. Facts

{7} Audubon is the servicing insurer for the FAIR Plan. Audubon issued a FAIR Plan property insurance policy to Plaintiff–Appellee (Maes) in March 2000. After a fire on her property, Maes made a claim with Audubon, which Audubon denied. In accordance with the scheme set forth in Section 59A–29–6, Maes then appealed the denial of coverage to the Superintendent of Insurance. The Superintendent held a hearing and decided that Audubon was required to pay the claim. After Audubon appealed to the district court, which upheld the Superintendent's order, Audubon paid the claim. Then, Maes filed a separate action against Audubon in district court, seeking pre- and post-judgment interest. She also sought compensatory and punitive damages for Audubon's alleged bad faith insurance practices and breach of the covenant of good faith and fair dealing. Audubon moved to dismiss the complaint, arguing that it was immune from suit under Section 59A–29–7. After the district court denied Audubon's motion, Audubon filed a petition for a writ of error with this Court. Audubon argued that this was an appropriate case in which to invoke the "collateral order" doctrine, which allows for appeal of non-final orders when, inter alia, the complaining party claims a right that will be effectively lost if the case is permitted to

proceed. *See Carrillo v. Rostro,* 114 N.M. 607, 613–14, 845 P.2d 130, 136–37 (1992). Because immunity from suit is such a right, *see Campos de Suenos, Ltd. v. County of Bernalillo,* 2001–NMCA–043, ¶ 15, 130 N.M. 563, 28 P.3d 1104, we granted Audubon's petition. We now reverse.

## STANDARD OF REVIEW

■ {8} The parties dispute whether the district court's order should be treated as ruling on a Rule 1–012(B)(6) NMRA motion or a ruling on motion for summary judgment. Because materials outside the pleadings, such as the bylaws of the Plan and documents from the proceeding before the Superintendent and the earlier district court appeal, were considered by the district court, we treat it as a motion for summary judgment. *See* Rule 1–012(B). When the facts are undisputed, we review rulings on summary judgment de novo. *State Farm Mut. Auto. Ins. Co. v. Barker,* 2004–NMCA–105, ¶ 4, 136 N.M. 211, 96 P.3d 336. With the exception of one assertion contained in an affidavit that was before the district court, the material facts of the case are undisputed. Because we do not consider the affidavit, the only question that we must decide is whether Section 59A–29–7 provides the FAIR Plan's servicing insurer with immunity from suit. That is a purely legal question of statutory construction, which we review de novo. *See State v. McClendon,* 2001–NMSC–023, ¶ 2, 130 N.M. 551, 28 P.3d 1092.

## DISCUSSION

{9} For convenience, we begin by reiterating the language of Section 59A–29–7:

There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the governing committee or the superintendent or his representative for any action taken by them in the performance of their powers and duties under the FAIR Plan Act.

The statute presents us with two questions: (1) whether Audubon is an entity to which the statute applies and (2) whether Audubon's actions in this case were conducted as part of its "powers and duties" under the FAIR Plan Act.

■ {10} As to the first question, Audubon advances two theories. First, Audubon argues that the statute applies to it because of its status as a member insurer. We do not agree. As Maes points out, the FAIR Plan Act gives member insurers only two "duties": (1) to "become and remain a member of the FAIR plan and the underwriting association and comply with the requirements thereof," and (2) to "subscribe to the articles of agreement on file in the superintendent's office." Section 59A–29–3. While Audubon is a member insurer (as all insurers must be in order to maintain licensure to sell essential property insurance in New Mexico), all of its actions that are relevant to this case were undertaken in its capacity as the Plan's servicing insurer, not in its capacity as a member insurer. Thus, we agree with Maes that Audubon is not immune from suit in this case as a result of its being a member insurer.

■ {11} Second, Audubon argues that it is entitled to the statutory immunity because, as the servicing insurer, it is an agent of the FAIR Plan. New Mexico law defines an agent as "a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." UJI 13–401 NMRA. We agree that Audubon is the Plan's agent. Audubon has an agreement with the FAIR Plan to service the policies underwritten by the Plan, and Audubon is paid a fee for doing so. Thus, Audubon is an agent of the FAIR Plan because it both "manages some affair" and "does some service for" the Plan. *See* UJI 13–401.

{12} Maes argues that Audubon is collaterally estopped from asserting the agency relationship because, Maes alleges, the Superintendent in the initial administrative proceeding found that Audubon was not an agent of the Plan. In support of this argument, Maes cites to the Superintendent's finding number 9 which provides that, "[n]either the [NMPIP] nor the [FAIR] Plan are

authorized to appoint 'agents' to market insurance under the [FAIR] Plan." We take this statement to indicate only that the FAIR Plan does not appoint insurance agents who sell policies to consumers. We are supported in this reading by the next two findings in the Superintendent's order. In findings 10 and 11, the Superintendent stated that "[l]icensed insurance agents are acting as agents of and on behalf of an applicant when they submit applications to the [FAIR] Plan," and that "[t]he [FAIR] Plan does not have contracts with independent insurance agents or brokers." Thus, when reading finding 9, relied on by Maes, in the context in which it was written, we do not agree that the findings speak to the presence or absence of an agency relationship between the FAIR Plan and Audubon. Instead, we think these findings speak to the relationship between insureds and their agents on the one hand and the FAIR Plan on the other.

{13} We also note that for a party to be collaterally estopped from litigating a fact, that fact must have been actually litigated and necessarily determined in a prior proceeding. *Rex, Inc. v. Manufactured Hous. Comm.*, 2003–NMCA–134, ¶ 5, 134 N.M. 533, 80 P.3d 470. Because the only purpose of the proceeding before the Superintendent was to review Audubon's coverage decision, it would have been unnecessary to determine the legal relationship between Audubon and the FAIR Plan. Thus, even if the Superintendent had made a finding regarding the relationship, collateral estoppel would be inapposite. Because Audubon is under a contractual obligation to provide a service to the FAIR Plan, we hold that it is an agent of the Plan. As such, it is an entity to whom the statutory immunity applies.

{14} The second question presented in this appeal is whether Audubon's actions were "taken by [it] in the performance of [its] powers and duties under the FAIR Plan Act." *See* § 59A–29–7. Maes argues that the term "powers and duties" refers only to establishing and administering the FAIR Plan, and not to the actual issuance or servicing of insurance policies. Audubon argues that issuing and servicing policies are the servicing insurer's primary "duties" under the FAIR

Plan Act. We agree with Audubon. Section 59A–29–4, which describes the authority of the Plan, states that the NMPIP has "authority on behalf of its members to cause to be issued property insurance policies." But because, under the Plan's bylaws, the Plan itself does not issue insurance policies, the Act necessarily contemplates that the Plan will contract with a servicing insurer who will issue and service policies. Thus, because Audubon plays a necessary role as the Plan's agent that helps to carry out the Plan's powers and duties, the issuance and servicing of policies are actions "taken by [Audubon] in the performance of [its] powers and duties under the FAIR Plan Act." *See* § 59A–29–7.

{15} Maes further asserts that the Plan's bylaws support a limited interpretation of the immunity statute because they do not provide for indemnification for actions taken by the servicing carrier. Maes seems to be arguing that (1) the statute clearly provides immunity for the Plan itself, (2) if the Plan indemnified the servicing carrier, that would indicate that the servicing carrier was simply acting as an instrumentality of the Plan and should thus get the benefit of the immunity statute, and (3) the fact that the Plan's articles and bylaws do not provide for such indemnity means that the servicing carrier is distinguishable from the Plan such that we should hold the immunity statute inapplicable to it. We reject this argument. First, we note that because all claims are ultimately paid by the Plan itself, there would be no logical reason for the Plan it indemnify the servicing carrier. Second, even if the Plan's articles or bylaws did provide indemnification for the servicing carrier, that would not change the effect of the immunity statute, which we have held applicable to the servicing carrier because it is the Plan's agent that helps to carry out the Plan's powers and duties under the Act.

{16} Maes also seems to argue that we should hold the immunity provision not applicable to Audubon because, even though the Plan ultimately pays any claims that are approved, it would not be liable for damages awarded as a result of the servicing carrier's breach of contractual obligations. We recognize that reinsurers like the Plan are gener-

ally liable only for claims paid out by the reinsured, and not for other types of damages. *See* 14 Eric M. Holmes & L. Anthony Sutin, *Holmes' Appleman on Insurance 2d* § 102.5(F), at 50–51 (2000) ("In the absence of a provision in the reinsurance contract providing coverage for 'bad faith' damages paid by the ceding insurer, . . . the reinsurer is not obligated to reimburse them."). However, we do not see the relevance of determining who would ultimately pay if Maes were allowed to proceed with her bad faith claims. The answer to that question would not alter our reading of the immunity statute, which states that "no cause of action of any nature shall arise" against the FAIR Plan or its agents. *See* § 59A–29–7. Because the language of the Act is "clear and unambiguous, we give the statute its plain and ordinary meaning and refrain from further interpretation." *State v. Vaughn*, 2005–NMCA–076, ¶ 33, 137 N.M. 674, 114 P.3d 354 (internal quotation marks and citation omitted). Thus, we agree with Audubon that all of Maes's claims are barred by the immunity statute.

{17}   Maes also asserts that even if Audubon is protected by the immunity statute under certain circumstances, it is not protected from suits based on contract claims. In support of this argument, Maes cites *Moriarty Municipal Schools v. New Mexico Public Schools Insurance Authority*, 2001–NMCA–096, 131 N.M. 180, 34 P.3d 124. *Moriarty* involved a statutorily created entity, the Public Schools Insurance Authority, which provided insurance to public schools. *See id.* ¶¶ 2, 6. After a denial of coverage, Moriarty sued the Authority for breaches of contract, fiduciary duty, and the implied covenant of good faith and fair dealing. *Id.* ¶ 4. The Authority moved to dismiss the claims on the basis of sovereign immunity. *Id.* ¶ 9. This Court ruled that sovereign immunity was not applicable. *Id.* ¶ 26. Maes relies on the following language from *Moriarty:* "The Authority cannot escape the realm of contract. Receiving a premium, providing insurance coverage, and denying benefits indicate the existence of a valid, written, enforceable insurance contract . . . between the Authority and Moriarty . . . . Moriarty therefore states

a claim . . . for breach of contract which is not barred by sovereign immunity." *Id.*

{18}   We find *Moriarty* to be distinguishable from the present case in two ways. First, in *Moriarty*, the defendant relied on sovereign immunity, rather than a specific grant of statutory immunity as is present in this case. To overcome the sovereign immunity defense, the *Moriarty* plaintiff was only required to allege the existence of a valid written contract. *Id.* ¶ 18 ("Because the Authority is a state governmental entity, Section 37–1–23 [the statute codifying sovereign immunity for contract claims] requires Moriarty to prove the existence of a valid written contract and permits a Rule 1–012(B)(6) dismissal if Moriarty cannot allege such a contract in its complaint against the Authority."). Here, there is no dispute that a valid insurance contract existed between Maes and Audubon. But because the issue here is statutory immunity and not sovereign immunity, that fact does not help Maes.

{19}   *Moriarty* is also distinguishable because the Court's primary concern in that case seems to have been that if Moriarty was barred by sovereign immunity from bringing its claims, it would have no avenue for relief whatsoever. *Id.* ¶ 20 ("The Authority made a unilateral determination of the extent of its . . . obligation, placing Moriarty at risk of inadequate recovery, with no adjudicatory process through which Moriarty could make a record supporting its position on the extent of the Authority's obligation."). Here, the FAIR Plan Act does provide a remedy—aggrieved individuals may appeal coverage decisions to the Superintendent, and they may then have the Superintendent's decision reviewed in the district court. Section 59A–29–6. Thus, *Moriarty* is not controlling. Because FAIR Plan insureds do have a remedy, we see no reason to disregard the explicit language of the immunity statute.

{20}   The other case Maes relies on is similarly inapposite. In *Louie v. State*, 37 Or.App. 49, 586 P.2d 364 (1978), a FAIR Plan insured sued the Plan itself for denying coverage. An immunity statute was held not to bar the suit, which was considered a breach of contract action. *Id.* at 365–66. The *Louie* court relied on specific legislative history in-

dicating that the immunity provision was intended to apply to tort actions and not to the type of claim at issue in that case. *Louie,* 586 P.2d at 366. Moreover, we note that the Oregon FAIR Plan Act did not provide any remedy for coverage denials. Here, the FAIR Plan Act provided Maes with a remedy, which she exercised. *See* § 59A–29–6. Thus, *Louie* is distinguishable from the present case and, like *Moriarty,* provides us with no authority under which to depart from the clear language of our immunity statute.

{21} Finally, Maes urges us to hold the immunity statute inapplicable to Audubon on two public policy grounds. First, she argues that if Audubon is immune under these circumstances, then FAIR Plan insureds would be "at the utter mercy of the insurance companies" and would have "absolutely no recourse for bad faith conduct or breaches of contract, regardless of how egregious the conduct might be." Second, she argues that it would constitute discrimination between insureds in violation of the Insurance Code if FAIR Plan insureds are prohibited from suing their insurers for bad faith and interest while other insureds are permitted to do so. *See* NMSA 1978, § 59A–16–17(D) (1984) (prohibiting discrimination between similarly situated insureds as to terms and conditions of coverage).

{22} We decline to depart on policy grounds from the result dictated by the language of the immunity statute. In view of the statute's clear and broad language, it seems reasonable to us to assume that the Legislature chose to set forth the following compromise: property owners may obtain insurance when they might not otherwise be able to, and in addition, they are given a speedy administrative remedy including the opportunity for judicial review; in exchange, they are deprived of the right they would ordinarily have to sue their insurers for bad faith. *Cf. Morales v. Reynolds,* 2004–NMCA–098, ¶ 6, 136 N.M. 280, 97 P.3d 612 ("The [Workers' Compensation] Act fulfills [its] purpose through a bargain in which an injured worker gives up his or her right to sue the employer for damages in return for an expedient settlement covering medical expenses and wage benefits, while the employ-

er gives up its defenses in return for immunity from a tort claim."). While it could be said that FAIR Plan Act compromise constitutes "discrimination" between different types of insureds, we find it to be a legitimate policy judgment by the legislature that we decline to second-guess. *See Benavidez v. Sierra Blanca Motors,* 122 N.M. 209, 214, 922 P.2d 1205, 1210 (1996) ("[I]t is the particular domain of the legislature, as the voice of the people, to make public policy . . . . Courts should make policy . . . only when the body politic has not spoken. . . ." (internal quotation marks and citation omitted)).

{23} We also note that the situation faced by FAIR Plan insureds is likely not as dire as Maes portrays it to be. First, insureds will not be "at the utter mercy of the insurance companies," because they have the remedy provided for in Section 59A–29–6. We note that Section 59A–29–6 could well cover some of the items of damage Maes claims, but we do not decide that issue because Maes never made a timely claim for them either to Audubon directly or in the proceeding before the Superintendent. Second, because the servicing insurer for the FAIR Plan bears no actual risk and earns no concomitant profits, it would have less incentive than insurance companies might ordinarily have to engage in bad faith practices in order to deny claims. Finally, even though we have decided that there is no private cause of action in the district court for bad faith punitive damages against the FAIR Plan's servicing insurer, other enforcement mechanisms are available. For example, the Insurance Code gives the Superintendent the authority to investigate insurers and to bring appropriate actions against them. *See, e.g.,* § 59A–29–4.

**CONCLUSION**

{24} We hold that Audubon is immune from suit under the circumstances of this case, and we reverse the district court's denial of Audubon's motion to dismiss.

{25} **IT IS SO ORDERED.**

CASTILLO, J., concur.

ROBINSON, Judge (dissenting).

**46**

ROBINSON, Judge (dissenting).

{26} The Majority assumes that the Legislature made a compromise, whereby "property owners may obtain insurance when they might not otherwise be able to, and in addition, they are given a speedy administrative remedy including the opportunity for judicial review; in exchange, they are deprived of the right they would ordinarily have to sue their insurers for bad faith." (Majority Opinion, pg. 1132).

{27} I am afraid that this would be a rather bad compromise. What good is the property insurance if those who provide it to you can seriously harm you by exercising bad faith and you cannot get relief through the courts? Not a very good compromise. Not a very good trade-off, in my opinion. We would be sanctioning a system where property insurance companies would have no incentive to refrain from acting in bad faith.

{28} The Majority compares the trade-off between worker and employer in the workers' compensation statutes, citing *Morales*. That comparison fails because *Morales, Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148, and the very recent case of *Salazar v. Torres*, 2005–NMCA–127, 138 N.M. 510, 122 P.3d 1279 [Vol. 44, No. 48 SBB 24 (Dec. 5, 2005)], *cert. granted*, No. 29,476, 138 N.M. 587, 124 P.3d 565 (Nov. 7, 2005), follow the trend that our Supreme Court set over the last several years. That trend began with *Delgado*, when the Supreme Court allowed a plaintiff worker to bring a tort action in court against an employer who acted with such a complete disregard for the worker's safety, that it wipes away the employer/insurer's immunity. *See also Salazar*, 2005–NMCA–127, ¶ 16, 138 N.M. 510, 122 P.3d 1279 (stating that "the balance between the worker and the employer in the [Workers' Compensation] Act was designed for accidental events or acts, not willful or intentional acts"). Prior to *Delgado* and *Morales*, a worker could not sue an employer in court, but was trapped by the Workers' Compensation Act in an administrative review, even when the employer acted with malice.

{29} Let us assume that the Majority is correct in pronouncing Section 59A–29–7 clear and unambiguous. I, therefore, set forth the language of this statute again:

There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the governing committee or the superintendent or his representative for any action taken by them in the performance of their powers and duties under the FAIR Plan Act.

*Id.*

{30} The Majority, in agreeing with Maes, states that "Audubon is not immune from suit in this case as a result of its being a member insurer." (Majority Opinion pg. 1129). It further states that all of Audubon's actions "that are relevant to this case were undertaken in its capacity as the Plan's *servicing insurer*, not in its capacity as a *member insurer*." (Majority Opinion, pg. 1129) (emphasis added). I read Section 59A–29–7 where it provides immunity for "the association or its agents or employees" to mean the people who work for the association, not a servicing insurer.

{31} Nowhere in this clear and unambiguous statute do we find immunity from liability for a servicing insurer. The statute mentions a member insurer, but not a servicing insurer.

{32} Statutory provisions granting immunity from suit must be strictly construed. *See Armijo v. Dep't of Health & Env't*, 108 N.M. 616, 618, 775 P.2d 1333, 1335 (Ct.App. 1989); *see also Martinez v. City of Cheyenne*, 791 P.2d 949, 956 (Wyo.1990), *overruled on other grounds by Beaulieu v. Florquist*, 2004 WY 31, 86 P.3d 863 (Wyo.2004).

{33} The NMPIP Bylaws and Articles support a limited immunity interpretation of Section 59A–29–7. The NMPIP Bylaws provide indemnification to member insurers only as to their status as a member, or by reason of the insurer having personal representatives or employees serving on the governing committee, other committee or subcommittee, or officer or employee of the NMPIP.

{34} Even the indemnification for officers and employees of the NMPIP is limited to actions taken in connection with the administration, management, conduct, or affairs of the Program or the Committee. Nowhere in the Articles or Bylaws is there a provision to provide indemnification to the member insurers for actions taken in their capacity as servicing carriers. That failure to provide indemnification is consistent with the notion that the Program is not liable for the servicing carrier's liability arising from the contracts it enters into with its insureds.

{35} In its Reply Brief, Appellant calls this argument a *"non sequiter* [sic] with a faulty premise" because "the Program pays all costs and expenses incurred by the Servicing Insurer, and all losses are borne . . . by the Member Insurers." Appellant finds no need for "an indemnification provision for the benefit of the Servicing Insurer, and the purported absence of one is irrelevant to the issue of immunity."

{36} This same logic could be used to find that there would be no need for indemnification language in the NMPIP Bylaws and Articles for member insurers in their capacity as a member, or having personal representatives or employees on the governing or other committees or officers of NMPIP.

{37} However, § 59A–29–7 already provides protection for these individuals or entities by granting them immunity.

{38} So, the language of the Bylaws and Articles demonstrates an intent to view member insurers differently than servicing insurers or carriers.

{39} It seems to me that immunity goes to the administrative matters and actions concerning the insurance pool or association, and not the matters of coverage. Audubon is neither an agent nor an employee of the NMPIP, the association set up under the Fair Plan Act.

{40} Audubon should not be immune from Maes' suit for bad faith insurance practices along with pre- and post-judgment intent. I would affirm the district court's denial of Audubon's motion to dismiss.

{41} I, therefore, respectfully dissent.