Certiorari Denied, No. 31,833, July 30, 2009

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-097

Filing Date: June 23, 2009

Docket No. 28,189

INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS, Local 1687
AFL-CIO,

       Plaintiff-Appellee,

v.

CITY OF CARLSBAD, a New Mexico
Municipal Corporation,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY
Jane Shuler Gray, District Judge

The Martin Law Firm
W.T. Martin, Jr.
Kenneth D. Dugan
Lane T. Martin
Carlsbad, NM

for Appellee

Miller Stratvert P.A.
Virginia A. Anderman
Charlotte Lamont
Albuquerque, NM

for Appellant

## OPINION

**WECHSLER, Judge.**

**{1}** The Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -26 (2003, as amended through 2005), provides for final, binding arbitration as an impasse procedure in the event a public employer and an exclusive representative of its employees reach an impasse that cannot be mediated in negotiations under the PEBA. Section 10-7E-18(B). The PEBA further provides that an impasse resolution between such parties that requires an expenditure of funds "shall be contingent upon the specific appropriation of funds by the [L]egislature and the availability of funds." Section 10-7E-17(E). We address in this appeal the tension between these provisions. We hold, as a matter of statutory interpretation, that Section 10-7E-17(E) (the contingency provision) prevails. The district court reached the opposite conclusion. We therefore reverse its grant of summary judgment to Plaintiff International Association of Firefighters, Local 1687, AFL-CIO (Union) and its denial of summary judgment to Defendant City of Carlsbad (City) and, in turn, award judgment to the City.

**BACKGROUND**

**{2}** The Union is the collective bargaining agent for the City's firefighters. It is their exclusive representative under Section 10-7E-15. The City and the Union have long engaged in collective bargaining and have had numerous collective bargaining agreements in place that set terms as to wages and working conditions. The last collective bargaining agreement expired on April 14, 2006.

**{3}** In negotiating for a new collective bargaining agreement, the Union and the City reached agreement on all issues except wages, on which issue they reached an impasse. They entered into a memorandum of understanding (MOU), stating that "[t]he impasse procedures as defined under [Section 10-7E-18(B)] will govern the process for resolution of this impasse." They selected an arbitrator, who, after conducting an arbitration proceeding, entered an arbitration award, on May 25, 2007, based on the Union's last, best offer. The award addresses a three-year period, granting a 3.25% wage increase in the first fiscal year, FY 2006-2007; a 15% one-time increase in addition to a 3% increase in FY 2007-2008; and a 3% increase in FY 2008-2009. The arbitrator specified that the award "makes no determination as to the economic capability of the City of Carlsbad as that decision must be left to the authority and determination of the City Council." The City did not appropriate funds in its FY 2007-2008 budget to put into effect the award's one-time 15% increase.

**{4}** The Union filed a complaint seeking enforcement of the arbitration award and an injunction, followed by a motion for partial summary judgment. The City responded with a counter-motion for summary judgment. The district court held a hearing on the motions and ruled from the bench in the Union's favor. It later entered numerous orders in conjunction with its ruling. The pertinent orders for the purposes of this appeal are (1) the order granting summary judgment and confirming the arbitration award, (2) the amended order issuing a writ of mandamus compelling the City to comply with the arbitration award,

2

and (3) the order granting the Union's request for attorney fees and costs in the amount of $46,927. The City appeals from these orders.

## ENACTMENT AND RE-ENACTMENT OF IMPASSE PROCEDURES

**{5}** The Legislature originally enacted the PEBA in 1992 with a sunset provision to take effect in 1999. NMSA 1978, §§ 10-7D-1 to -26 (1992, as amended through 1998) (repealed 1999). It re-enacted the PEBA in 2003 in mostly the same form as the original version. *See* §§ 10-7E-1 to -26. *See generally* S. Barry Paisner & Michelle R. Haubert-Barela, *Correcting the Imbalance: The New Mexico Public Employee Bargaining Act and the Statutory Rights Provided to Public Employees*, 37 N.M. L. Rev. 357 (2007) (discussing the history surrounding the enactment of New Mexico's PEBA). The purpose in both versions was the same, "to guarantee public employees the right to organize and bargain collectively with their employers, to promote harmonious and cooperative relationships between public employers and public employees and to protect the public interest by ensuring, at all times, the orderly operation and functioning of the state and its political subdivisions." Section 10-7E-2; § 10-7D-2. In its re-enactment, the Legislature made a significant change to the impasse resolution procedures. It instituted arbitration as a final procedure in resolving an impasse in negotiations between a public employer and an exclusive representative of public employees. *See* § 10-7E-18(B); § 10-7D-18(B). It also expanded the scope of language limiting the ability of negotiating parties in circumstances that require the expenditure of funds. *See* §§ 10-7E-17(E), 10-7E-18(B); § 10-7D-17(E).

**{6}** We begin our analysis with these provisions and their reflection of legislative intent. We then address the Union's several arguments that bear on the legislative intent. We finally consider the Union's position that genuine issues of material fact remain so as to defeat summary judgment in favor of the City.

## LEGISLATIVE INTENT OF IMPASSE PROCEDURES

**{7}** The impasse resolution procedures that the Legislature adopted in the PEBA in 2003 included two alternatives for resolving an impasse in negotiations. The parties could (1) engage in mediation, which would lead to arbitration, or (2) enter into a written agreement to use an alternative procedure. Section 10-7E-18 containing these procedures provides, as pertinent to this appeal:

> (B) The following impasse procedures shall be followed by all public employers and exclusive representatives, except the state and the state's exclusive representatives:
>
> (1) if an impasse occurs, either party may request from the board or local board that a mediator be assigned to the negotiations unless the parties can agree on a mediator. A mediator with the federal mediation and conciliation service shall be assigned by the board or local board to assist

3

negotiations unless the parties agree to another mediator; and

(2)    if the impasse continues after a thirty-day mediation period, either party may request a list of seven arbitrators from the federal mediation and conciliation service.  One arbitrator shall be chosen by the parties by alternately striking names from such list. Who strikes first shall be determined by coin toss.  The arbitrator shall render a final, binding, written decision resolving unresolved issues pursuant to [Section 10-7E-17(E)] of the [PEBA] and the Uniform Arbitration Act[, NMSA 1978, §§ 44-7A-1 to -32 (2001),] no later than thirty days after the arbitrator has been notified of his or her selection by the parties.  The arbitrator's decision shall be limited to a selection of one of the two parties' complete, last, best offer.  The costs of an arbitrator and the arbitrator's related costs conducted pursuant to this subsection shall be shared equally by the parties.  Each party shall be responsible for bearing the cost of presenting its case.  The decision shall be subject to judicial review pursuant to the standard set forth in the Uniform Arbitration Act.

(C)    A public employer other than the state may enter into a written agreement with the exclusive representative setting forth an alternative impasse resolution procedure.

**{8}**    Of the alternative procedures of Section 10-7E-18, the parties elected a hybrid; they entered into an agreement, the MOU, that would fit the requirements of Subsection C and agreed to proceed directly to arbitration under Subsection B.  Acting under Subsection B, the parties selected an arbitrator, who, as the statute demands, entered a written decision within thirty days based on the Union's last, best offer. Section 10-7E-18(B)(2). Subsection B calls for the arbitrator's decision to be a "final, binding" one.  Section 10-7E-18(B)(2).

**{9}**    Section 10-7E-18(B) also provides for the arbitrator's decision to be "pursuant to" Section 10-7E-17(E).  Section 10-7E-17(E) states, in pertinent part:

An impasse resolution or an agreement provision by a public employer other than the state or the public schools and an exclusive representative that requires the expenditure of funds shall be contingent upon the specific appropriation of funds by the appropriate governing body and the availability of funds. . . .  An arbitration decision shall not require the reappropriation of funds.

The tension in the language of Section 10-7E-18(B)(2) and Section 10-7E-17(E) providing for a final, binding arbitration decision that is contingent upon the appropriation and availability of funds presents the issue in this case and requires interpretation of the PEBA. The district court interpreted the PEBA to conclude that the arbitrator's award was final and binding on the parties.  On appeal, we review de novo a district court's interpretation of a

4

statute. *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 6, 141 N.M. 686, 160 P.3d 595. In doing so, we endeavor to fulfill the intent of the Legislature in enacting the statute. *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236.

**{10}** The Union urges us to accept the district court's interpretation by highlighting the Legislature's language in Section 10-7E-18(B)(2) that the arbitrator "shall render a final, binding" decision. It supports its position with policy arguments stressing the legislative purpose of guaranteeing public employees the right to organize and collectively bargain with public employers. Section 10-7E-2. According to the Union, the Legislature intended mandatory arbitration to be an essential tool of public employees in the collective bargaining process because the PEBA forbids striking by public employees, a right available to private sector employees. Therefore, the Union continues, unless mandatory arbitration is final and binding, the collective bargaining right of public employees guaranteed by the PEBA will not be meaningful.

**{11}** When engaging in statutory construction, we look first to the plain language of the statute and construe it "in its entirety, considering all provisions in relation to each other." *City of Deming*, 2007-NMCA-069, ¶ 21. We seek to give meaning to all parts of the statute, such that no portion is rendered surplusage or meaningless. *Regents of Univ. of N.M.*, 1998-NMSC-020, ¶ 28. With this foundation for our analysis, the Union argues that an interpretation of the PEBA contrary to that made by the district court would render the "final, binding" language of Section 10-7E-18(B)(2) meaningless. We reach the opposite conclusion.

**{12}** Section 10-7E-18(B)(2) states that an arbitrator shall enter a final, binding decision and also that such decision must be pursuant to Section 10-7E-17(E). Section 10-17E-17(E) makes an impasse resolution that requires the expenditure of funds contingent upon the appropriation and availability of funds. By framing the arbitrator's authority in this manner in Section 10-7E-18(B), the Legislature qualified the arbitrator's authority with the language of Section 10-7E-17(E). *See Kahrs v. Sanchez*, 1998-NMCA-037, ¶ 24, 125 N.M. 1, 956 P.2d 132 (filed 1997) (presuming that the Legislature is aware of existing law when enacting statutes). Indeed, if we were to determine, as we believe the district court did, that the arbitrator could act under Section 10-7E-18(B)(2) in a final and binding way without reference to the requirements of Section 10-7E-17(E), we would be ignoring the legislative language of Section 10-7E-18(B)(2) and considering its reference to Section 10-7E-17(E) to be meaningless. *See Regents of Univ. of N.M.*, 1998-NMSC-020, ¶ 28 (mandating that no part of a statute is surplusage). Instead, we can give meaning to the two sections in relation to each other by reading the qualification of Section 10-7E-17(E) to define the arbitrator's authority to render a final, binding decision: it is contingent upon the appropriation and availability of funds when the decision requires the expenditure of funds.

**{13}** As to the Union's policy arguments, while we agree with the Union regarding the importance of finality in the collective bargaining process, the legislative purpose of the

5

PEBA also includes ensuring "the orderly operation and functioning" of political subdivisions. Section 10-7E-2. Section 10-7E-17(E) comports with this purpose because it subjects an arbitration award to the appropriation and availability of funds of a political subdivision. From the language of the PEBA, we cannot agree with the Union that the Legislature, when considering a balance of the public interests, raised the need for binding arbitration above the stability of public funds. Indeed, the 1992 version of the PEBA did not provide for mandatory arbitration as an impasse procedure and, for public employers other than the state and their employees' exclusive representatives, provided only factfinding and recommendations by a factfinder. Section 10-7D-18(B). It also prohibited strikes. Section 10-7D-21(A). When adopting arbitration in 2003, the Legislature did not mandate arbitration but, instead, provided it as an option. And while the Legislature required that any arbitration be final and binding, it subjected it to the contingency of the appropriation and availability of funds that had been part of the 1992 version of the PEBA. Sections 10-7E-17(E), 10-7E-18(B); § 10-7D-17(E). It continued to leave to governmental entities the ability to manage and appropriate their public funds. *See* § 10-7E-17(E). The 2003 version of the PEBA simply did not go as far as the Union argues.

## THE UNION'S OTHER LEGISLATIVE INTENT ARGUMENTS

### Limited Role of Section 10-7E-17(E)

{14}    The Union makes several arguments differing from our interpretation. It argues in part that the Legislature did not intend Section 10-7E-17(E) to apply in this case. According to the Union, Section 10-7E-17(E) only provides that the contingency of appropriation and availability of funds apply to "[a]n impasse resolution or an agreement provision *by* a public employer . . . and an exclusive representative that requires the expenditure of funds." (Emphasis added.) It contends that if the procedure in this case is an impasse resolution, it was "by" the arbitrator, not the City and the Union. It concludes that the only part of Section 10-7E-17(E) that applies to Section 10-7E-18(B) is the last sentence that forbids an arbitration decision from requiring the reappropriation of funds.

{15}    We cannot agree with the Union's reading of the statutory provisions. First, arbitration is an impasse resolution procedure that results in an impasse resolution. Section 10-7E-18(B) provides the "impasse procedures" to be followed by public employers other than the state and their employees' exclusive representatives. It provides arbitration as the ultimate procedure. Section 10-7E-18(B)(2). The arbitration procedure requires a decision by an arbitrator "resolving unresolved issues." *Id.* Section 10-7E-18(B)(2) intends that the decision and the procedure used to reach it constitute an impasse resolution. Second, the 2003 version of the PEBA modified both Section 10-7D-18(B) and Section 10-7D-17(E). The Legislature made reference to Section 10-7E-17(E) in Section 10-7E-18(B) in 2003 when it enacted the new impasse resolution procedures. In addition, the 1992 version provided in pertinent part: "Any agreement provision by a public employer other than the state or the public schools and an exclusive representative that requires the expenditure of funds shall be contingent upon the specific appropriation for wages by the appropriate

6

governing body and the availability of funds." Section 10-7D-17(E). By changing the language to pertain to "[a]n impasse resolution or an agreement provision by a public employer other than the state or the public schools and an exclusive representative" and by referencing Section 10-7E-17(E) in Section 10-7E-18(B), the Legislature linked Section 10-7E-17(E) with Section 10-7E-18(B) so that the impasse resolution alternatives discussed in Section 10-7E-18(B) applied to both sections. *See Quantum Corp. v. State Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (stating that statutes should be construed together with other statutes on the same subject matter). Third, as drafted, Section 10-7E-18(B)(2) refers to the entirety of Section 10-7E-17(E), not only the last sentence. If the Legislature intended to only refer to the last sentence, it could have done so, or even incorporated it into Section 10-7E-18(B)(2). *See Kahrs*, 1998-NMCA-037, ¶ 24 (presuming that the Legislature is aware of existing law when enacting statutes).

**{16}** The Union also contends that our interpretation of the PEBA would render the last sentence of Section 10-7E-17(E) meaningless. The Union states that the sentence was added when the Legislature added the arbitration provision to Section 10-7E-18(B). It reasons that "reappropriation" is a form of "appropriation," and Section 10-7E-17(E) already provided that an arbitrator could not "appropriate funds." However, reappropriation is different from appropriation because it involves a modification of existing appropriations. Moreover, the Union contends that there is no reappropriation issue in this case. Additionally, we cannot agree with the Union that Section 10-7E-18(B)(2) controls over Section 10-7E-17(E) because it is the more specific statute. The legislative language specifically states its intent that we construe Section 10-7E-17(E) as part of Section 10-7E-18(B)(2). This argument would require that we ignore the Legislature's specific reference to Section 10-7E-17(E) in Section 10-7E-18(B)(2).

**Fairness and Due Process**

**{17}** The Union further argues that our interpretation is unfair and violative of due process. It contends that it is unfair because it is one-sided to allow the City the opportunity to avoid an arbitration decision without giving the Union the same opportunity. It notes the public policy favoring arbitration and cites *Padilla v. State Farm Mutual Automobile Insurance Co.*, 2003-NMSC-011, 133 N.M. 661, 68 P.3d 901, in which our Supreme Court considered a provision in an insurance contract that provided for mandatory arbitration to be binding only if it did not exceed the limits of the Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2003), and otherwise allowed either party to file a de novo appeal. *Padilla*, 2003-NMSC-011, ¶ 2. The Court held the contractual provision to be void as substantively unconscionable because it was incompatible with the public policies of encouraging arbitration and protecting persons from uninsured drivers as expressed in the MFRA. *Id.* ¶¶ 2, 13-14. However, in this case, we are not addressing the application of statutory policies to a contractual provision between private parties, as in *Padilla*. Rather, our issues involve the interpretation of the Legislature's policies that it set forth in the PEBA. As we have discussed, the Legislature engaged in a balancing of policies in enacting the PEBA. The contingency language of

Section 10-7E-17(E) that protects the public fiscally when funds are not available to meet an arbitrator's decision fulfills one of the stated purposes in the statute. *See* § 10-7E-2.

**{18}**    With regard to due process, the Union also relies on *Board of Education of Carlsbad Municipal Schools v. Harrell*, 118 N.M. 470, 882 P.2d 511 (1994), to contend that due process restraints apply to arbitration under the PEBA. In *Harrell*, our Supreme Court applied due process requirements to the compulsory arbitration process of NMSA 1978, Section 22-10-17.1 (1993). *Harrell*, 118 N.M. at 477, 882 P.2d at 518. It stressed the difference between voluntary and compulsory arbitration.

> While voluntary arbitration may be conducted using any procedure acceptable to the participants, compulsory arbitration must comport with due process.    [V]oluntary    arbitration    and    compulsory    arbitration    are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process.

*Id.* (alteration in original) (internal quotation marks and citation omitted). It concluded that the arbitration was compulsory, even though the employee contractually consented to submit his grievance to arbitration, because the statute imposed a mandatory arbitration requirement and that the statute violated due process insofar as it restricted judicial review of the arbitrator's decision. *Id.* at 476, 486, 882 P.2d at 517, 527. The PEBA is very different. Section 10-7E-18(C) enables a public employer other than the state and an exclusive representative to agree in writing to any impasse resolution procedure, notwithstanding the procedures set forth in Section 10-7E-18(B)(2) that call for arbitration. Arbitration becomes mandatory only if the parties elect to proceed under Section 10-7E-18(B), as the Union and the City did by their MOU. *Harrell* does not apply to this case. Moreover, the contingency provisions of Section 10-7E-17(E) that recognize that a public entity may not have the funds available to comply with an arbitrator's decision are reasonably designed to fulfill the statutory purpose of protecting the public interest "by ensuring, at all times, the orderly operation and functioning" of the City. Section 10-7E-2; *see Rex, Inc. v. Manufactured Hous. Comm.*, 2003-NMCA-134, ¶ 15, 134 N.M. 533, 80 P.3d 470 (explaining that an argument for due process requires a balancing of the private interest and the risk of erroneous deprivation against the government's interest).

**Interpretation of the MOU**

**{19}**    The Union makes the additional argument that the parties agreed to binding arbitration because they did not refer to Section 10-7E-17(E) in the MOU. The MOU states: "The impasse procedures as defined under [Section 10-7E-18(B)] will govern the process for resolution of this impasse." According to the Union, because the MOU refers only to the impasse procedures of Section 10-7E-18(B) and does not reference Section 10-7E-17(E), Section 10-7E-17(E) should not be considered to resolve this impasse. We do not agree.

The parties expressly agreed to use the "impasse procedures as defined under" Section 10-7E-18(B). Those procedures specifically reference Section 10-7E-17(E). Even though the parties did not mention Section 10-7E-17(E), the impasse procedures of Section 10-7E-18(B), as designated by the parties, incorporate Section 10-7E-17(E).

**Appropriation of Funds**

**{20}** The Union alternatively argues that even if Section 10-7E-17(E) applies, the arbitrator's salary award did not require the appropriation of funds so as to trigger Section 10-7E-17(E). The Union suggests, citing *Municipality of Anchorage v. Anchorage Police Department Employees Ass'n*, 839 P.2d 1080 (Alaska 1992), that the City could have accommodated the arbitration award by shifting funds or by cutting other expenditures. However, *Municipality of Anchorage* is not on point. It involved an ordinance that mandated binding arbitration, and the pertinent issue was whether the potential for judicial enforcement of an arbitrator's award under the ordinance unconstitutionally delegated the power to appropriate funds. *Id.* at 1089. The court observed in that context that the executive and legislative branches of government must provide the required funding for collective bargaining arbitration awards because they are part of the contractual negotiations. *Id.* at 1090-91. The case before us does not raise that issue. Moreover, as distinguished from the ordinance in *Municipality of Anchorage*, the PEBA provides that arbitration decisions requiring the expenditure of funds are contingent upon the appropriation and availability of funds. Section 10-7E-17(E).

**{21}** Nor do we agree with the Union that the district court's judgment, confirmation of the arbitrator's award, and writ of mandamus require the City's compliance without regard to any appropriation. The argument simply ignores the question of the appropriation and availability of funds as set forth in Section 10-7E-17(E).

**ABSENCE OF GENUINE ISSUE OF MATERIAL FACT**

**{22}** The district court granted the Union's motion for summary judgment and denied the City's counter-motion for summary judgment. When the district court acts on counter-motions for summary judgment based on a common legal issue, this Court may reverse both the grant of one motion and the denial of the other and award judgment on the previously denied motion. *Cuevas v. State Farm Mut. Auto. Ins. Co.*, 2001-NMCA-038, ¶ 6, 130 N.M. 539, 28 P.3d 527.

**{23}** The Union asserts that it would not be appropriate for us to award judgment to the City because genuine issues of material fact remain that must be resolved at trial. *See* Rule 1-056(C) NMRA (stating that summary judgment is appropriate if the summary judgment record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). The Union first contends that issues of fact remain concerning its claims that (1) the City breached its obligation under the PEBA "to negotiate in good faith by arbitrarily and without adequate grounds failing to honor the

9

arbitration award" and (2) the City defrauded the Union by "pretending that the arbitration award would bind it and luring [the Union] into executing the arbitration agreement." However, the Union did not raise these claims in its complaint. It mentions such claims in one of its briefs in conjunction with the counter-motions for summary judgment, referring to Paragraphs 27-29 of its complaint. However, those paragraphs merely recite allegations that the City budgeted for portions, but not all, of the arbitrator's award. The complaint does not contain any claim that the City breached its obligation under the PEBA to negotiate in good faith or that it defrauded the Union.

**{24}** The Union also contends that there are issues of fact that must be resolved due to the ambiguity of the MOU. But we do not agree that the MOU is ambiguous. As we have discussed, it clearly requires the parties to follow the impasse procedures of Section 10-7E-18(B). That section unambiguously incorporates Section 10-7E-17(E). There is no remaining factual issue.

## CONCLUSION

**{25}** Under the PEBA, an arbitration award requiring a public employer other than the state to expend funds is contingent upon the appropriation and availability of funds. We reverse the district court's grant of summary judgment to the Union and denial of summary judgment to the City. We award judgment to the City. Because we reverse on the merits, we also reverse the district court's award of attorney fees and costs to the Union.

**{26}  IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**ROBERT E. ROBLES, Judge**

Topic Index for *Intl. Assn. of Firefighters v. City of Carlsbad*, No. 28,189

| **CP** | **CIVIL PROCEDURE** |
|--------|---------------------|
| CP-SJ  | Summary Judgment    |

| **EL**  | **EMPLOYMENT LAW**    |
|---------|-----------------------|
| EL-CB   | Collective Bargaining |
| EL-LU   | Labor Unions          |

| | |
|---|---|
| **GV** | **GOVERNMENT** |
| GV-PE | Public Employees |
| | |
| **RE** | **REMEDIES** |
| RE-AN | Arbitration |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |