**Certiorari Denied, April 1, 2010, No. 32,256**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-039**

**Filing Date:  February 11, 2010**

**Docket No. 28,679**

**RAOUL J. CORDOVA, RITA M. PADILLA-GUTIERREZ,
FERMIN MONCIVAIZ, JENNIE MONCIVAIZ,
ANTHONY CARRION, RICHARD EUBANK,
JUDY EUBANK, ERNEST ROWLISON, and
SUE ROWLISON,**

> **Plaintiffs-Appellants,**

**v.**

**BOARD OF COUNTY COMMISSIONERS
OF VALENCIA COUNTY and COVENANT
HEALTH SYSTEM, a foreign non-profit
organization,**

> **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
Camille Martinez Olguin, District Judge**

James Lawrence Sanchez Trial Lawyer, P.C.
James Lawrence Sanchez
Belen, NM

for Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Arthur D. Melendres
Joan D. Marsan
Albuquerque, NM

for Appellees

**OPINION**

1

**WECHSLER, Judge.**

**{1}**     Plaintiffs, residents and citizens of Valencia County, New Mexico, appeal from the district court's decision denying their complaint for declaratory and injunctive relief. Plaintiffs' complaint sought to (1) enjoin Defendant Board of County Commissioners of Valencia County from entering into a hospital management agreement with any entity that did not already have an existing and operating hospital facility within the county and (2) prohibit Defendant from using mill levy proceeds for the construction of a hospital. The district court found that Defendant did not exceed its authority under the Hospital Funding Act. We agree and affirm.

**BACKGROUND**

**{2}**     In late 2006, the Valencia County voters were presented with and approved a "Hospital Tax Question" that provided: "Shall Valencia County, New Mexico, be authorized to impose, for a period of eight years, a 2.75 mills ad valorem tax to pay the cost of operating, maintaining or providing for a hospital/24 hour emergency healthcare facility in Valencia County?" In May 2007, Defendant "voted to authorize Covenant Health System to take action to issue bonds for the construction of a hospital." In June 2007, Plaintiffs filed their first complaint for declaratory and injunctive relief and an application for a temporary restraining order. On August 22, 2007, Defendant voted to follow and approve the following steps to construct a hospital (the August 22 decision):

> Step 1:     Establish Nonprofit organization—Valencia County Health Commons. . . .

> Step 2:     Take necessary action to activate mill levy for the hospital for 2007.

> Step 3:     a.     Board for Valencia County Health Commons to develop bylaws [and] articles of incorporation . . . .

> b.     County enters into a contract with the nonprofit to transfer the mill levy proceeds for hospital operations for the eight-year period. The mill levy proceeds to remain in an escrow account prior to the hospital opening.

> c.     VIA donates hospital site to nonprofit.

> d.     Nonprofit enters into a contract with Covenant Health System to design, construct, and operate hospital. . . .

> e.     Nonprofit enters into a contract with a private

2

investment company to finance the project through tax-exempt bonds payable from net operating revenue of the facility . . . . Bonds would be issued through the County acting as a conduit issuer under the County Industrial Revenue [B]ond Act . . . .

In response, Plaintiffs filed an amended complaint and second application for a temporary restraining order. The district court enjoined Defendant from "entering into any contract to transfer mill levy proceeds to any entity" until the court could rule on the merits.

{3}     Defendant then filed a motion for the district court to approve the proposed health care facilities contract (the contract) with Valencia Health Commons (VHC), the non-profit corporation formed in accordance with Defendant's August 22 decision. The contract provides in pertinent part (1) for capital expenditures and construction costs of the hospital to be paid for by bond financing with an independent company; (2) for the transfer of mill levy proceeds to VHC if VHC receives a certificate of substantial completion within thirty-six months of entering into the contract to be used for the operation and maintenance of a county hospital, but not for capital expenditures or construction costs; (3) for the termination of the contract without cause after the first three years of the contract upon 180 days' notice, unless VHC is still obliged "to make debt service payments on revenue bonds"; and (4) for the termination of the contract if the mill levy proceeds are used "for any purpose other than the operation and maintenance of the [h]ospital." Plaintiffs' response to Defendant's motion argued that the contract (1) permitted Defendant to enter into a health care facilities contract with a hospital that was not in current existence, in violation of the Hospital Funding Act, NMSA 1978, §§ 4-48B-1 to -29 (1947, as amended through 2003); (2) violated the contract termination requirements of the Hospital Funding Act; (3) allowed for mill levy proceeds to pay for the construction of a hospital, in violation of the Hospital Funding Act and the New Mexico Constitution, N.M. Const. art. IX, § 10; and (4) illegally bound future county commissions to the contract, in violation of the Hospital Funding Act.

{4}     The district court denied injunctive relief, specifically finding that Defendant did not exceed its authority under the Hospital Funding Act. The district court further found that "there [would] not be a transfer of monies from the [m]ill [l]evy for operation and maintenance of a hospital until such time as there is an operable hospital" and that the mill levy proceeds "currently being collected by Valencia County . . . remain[] under the control of Valencia County for the operation and maintenance of a hospital and [are] not pledged for the construction of the hospital." Plaintiffs appeal.

**HOSPITAL FUNDING ACT**

{5}     Plaintiffs argue that the contract is a violation of the Hospital Funding Act because (1) it provides for an illegal pledge of mill levy proceeds, (2) there is not a "contracting hospital," and (3) the county failed to retain the power to terminate the contract. The issues raised by Plaintiffs turn on contract interpretation and statutory interpretation, both of which

3

we review de novo. *Hedicke v. Gunville*, 2003-NMCA-032, ¶ 24, 133 N.M. 335, 62 P.3d 1217 (filed 2002). When reviewing statutes, we attempt to ascertain and fulfill legislative intent. *Int'l Ass'n of Firefighters v. City of Carlsbad*, 2009-NMCA-097, ¶ 9, 147 N.M. 6, 216 P.3d 256. We look first to the statute's plain language, *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 27, 129 N.M. 677, 12 P.3d 431, and "[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (filed 2003) (alteration in original) (internal quotation marks and citation omitted).

**{6}**     Plaintiffs first argue that the contract illegally pledges mill levy proceeds "for a future hospital" when Section 4-48B-12(B) merely "permits a county to enter into an agreement to pay to a contracting hospital the amounts required in the performance of any health care facilities contracts made pursuant to the Hospital Funding Act." Plaintiffs further assert that Defendant "does not have the authority to collect the mill levy until it is ready to spend the money for actual treatment." We are not persuaded by Plaintiffs' limited interpretation of the Hospital Funding Act.

**{7}**     Section 4-48B-5(N) authorizes counties to distribute mill levy proceeds to a contracting hospital. A contracting hospital is defined as "a hospital located in New Mexico that enters into a health care facilities contract." Section 4-48B-3(C). A health care facilities contract is "an agreement between a hospital and a county . . . that provides for the payment by the county . . . of all or a portion of the proceeds of a mill levy." Section 4-48B-3(G). Plaintiffs point to no language in the statute, and we find no language in the statute, that prohibits placing mill levy proceeds, subject to a county election, in an escrow for future use. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that when a party cites no authority for a proposition, we assume no such authority exists). Rather, as stated above, the statute permits the use of mill levy proceeds for the performance of a health care facilities contract for a hospital located in New Mexico. The contract at issue does not pledge mill levy proceeds for anything other than the performance of a health care facilities contract for a hospital located in New Mexico, albeit one that will be operating at some point in the future. Plaintiffs further imply that the Legislature's use of "located in" requires the presence of physical facilities, but we find no such requirement in the statute.

**{8}**     Moreover and significantly, Plaintiffs' argument does not comport with the expressed purpose of the Hospital Funding Act "to provide flexibility in financing construction, operation and maintenance of necessary hospital facilities." Section 4-48B-2(B). Although the August 22 decision includes instructions to "transfer the mill levy proceeds for hospital operations," the contract provides for no transfer of mill levy proceeds until VHC obtains a certificate of substantial completion—in other words, until a hospital physically exists. Reading the Hospital Funding Act to prohibit placing mill levy funds in escrow for a legitimate future use would not "provide flexibility" in the financing of necessary facilities. *See id.* Such an interpretation would foreclose a proper expenditure of mill levy funds explicitly permitted by the Act. We do not agree with Plaintiffs that Defendant exceeded the

4

authority granted it by the Hospital Funding Act.

**{9}** Plaintiffs next argue that the contract violates the Hospital Funding Act because there is not a "contracting hospital." Plaintiffs' argument is essentially the same as their argument regarding pledging mill levy proceeds. We reiterate that the statute permits the use of mill levy proceeds for the performance of a health care facilities contract for a hospital located in New Mexico and that the contract does not pledge mill levy proceeds for anything other than the performance of a health care facilities contract for a hospital located in New Mexico. Again, nothing in the statute mandates that a "contracting hospital" must be in current, physical existence. Plaintiffs misread Section 4-48B-3(G) when they argue that "[a] contracting hospital must have 'physical facilities' and provide actual services." Section 4-48B-3(G) actually states that a hospital under a health care facilities contract agrees to "make available" hospital facilities, equipment, records, and "physical facilities . . . that comply with the [department of health] regulations." This language neither states nor implies that the physical facilities need to be in existence at the time the contract is executed or that, absent present physical facilities, a contracting hospital does not exist. Again, Plaintiffs' limited reading of the Hospital Funding Act does not provide flexibility, and we decline to so limit the Act's reach. *See Int'l Ass'n of Firefighters*, 2009-NMCA-097, ¶ 9 (stating that we seek to give effect to legislative intent).

**{10}** Plaintiffs additionally argue that the contract violates the Hospital Funding Act because Defendant did not retain the power to terminate the contract as required by Section 4-48B-5(J)(1). Although Plaintiffs assert that the contract "fails to provide that future [c]ounty [c]ommissions may terminate the agreement without cause," we find no such evidence in the record and instead note that the contract provides for termination "without cause upon one hundred eighty days' (180) notice after the first three (3) years of the contract." The contract does limit the termination without cause language to portions of the "lease term in which VHC is obligated under the lease to make debt service payments on revenue bonds." However, Plaintiffs make no argument that such a limitation is impermissible, and, indeed, Section 4-48B-5(J)(2) expressly allows this type of limitation.

**{11}** Plaintiffs further argue, citing Section 4-48B-5(J), that the eight-year contract, which is automatically renewed subject to voter approval, "is an illegal attempt to bind all future [c]ounty [c]ommission's [sic] to this [contract], which violates the Hospital Funding Act." Plaintiffs' argument again relies on their incorrect assertion that "[t]he Hospital Funding Act does not permit the pledge of a [m]ill [l]evy at all," and they conclude, without citation, that the Hospital Funding Act therefore does not permit the pledge of mill levy proceeds "for the guaranteed eight year period." Similarly, Plaintiffs argue, again without citation, that "the Hospital [F]unding Act does not permit that future approvals of a [m]ill [l]evy may be tied to the proposed agreement." We assume no authority exists for these propositions and decline to impose such a limited reading on the Hospital Funding Act. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330. The district court did not err in finding that Defendant did not exceed its authority under the Hospital Funding Act.

**NEW MEXICO CONSTITUTION**

**{12}** Plaintiffs argue that the contract violates the New Mexico Constitution, as well as Section 4-48B-6 of the Hospital Funding Act, because it seeks to finance the construction of a new hospital with mill levy proceeds without voter approval. This argument rests on Plaintiffs' presumption that Defendant "was in reality seeking [the contract] to finance the construction of a new hospital." Plaintiffs accurately cite Section 4-48B-12(B) for the proposition that mill levy proceeds cannot be used for the construction of a hospital. However, as pointed out by Defendant, Plaintiffs fail "to demonstrate . . . that the county has used or intends to use mill levy proceeds to build a hospital. Mill levy proceeds currently are and will remain in escrow until a hospital facility is constructed." Under the contract, mill levy proceeds would only be used for the operation and maintenance of a hospital, once one is in existence. As such, the district court did not err in finding that the contract is not unconstitutional.

**CONCLUSION**

**{13}** We affirm the district court's order denying Plaintiffs injunctive relief.

**{14}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Cordova v. Board of County Commissioners of Valencia County_, No. 28,679**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-SR | Standard of Review |

| **AS** | **ASSOCIATIONS AND SOCIETIES** |
|---|---|
| AS-HS | Hospitals |

| **CN** | **CONTRACTS** |
|---|---|
| CN-IN | Interpretation |

| **CT** | **CONSTITUTIONAL LAW** |
|---|---|

| | |
|---|---|
| CT-NM | New Mexico Constitution, General |
| **GV** | **GOVERNMENT** |
| GV-BI | Bond Issues |
| GV-CU | Counties |
| GV-PC | Public Contracts and Purchase |
| GV-PF | Public Funds |
| **MS** | **MISCELLANEOUS STATUTES** |
| MS-HF | Hospital Funding Act |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |