This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS LOCAL 244, DIEGO ARENCON, ROBERT LUJAN, KENNETH GOODYEAR, and AHREN GRIEGO,**

      Plaintiffs-Appellants,

v.                                          **NO. 31,192**

**CITY OF ALBUQUERQUE, ALBUQUERQUE FIRE DEPARTMENT,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Sanchez, Mowrer & Desiderio, P.C.
Frederick M. Mowrer
Albuquerque, NM

Rose Bryan, P.C.
Rose Bryan
Albuquerque, NM

for Appellants

City of Albuquerque

David Tourek, City Attorney
Rebecca E. Wardlaw, Assistant City Attorney
Albuquerque, NM

for Appellees
Conklin, Woodcock & Ziegler, P.C.
Robin A. Goble
Albuquerque, NM

for Appellee Albuquerque City Fire Department

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

The Association of Fire Fighters Local 244 (Local 244) raises two issues on appeal: the dismissal of its complaint for breach of contract against the City of Albuquerque (City) for failure to state a claim upon which relief can be granted and the denial of its motion to compel discovery. Because we agree that Local 244's complaint sufficiently alleges a breach of contract and that dismissal was premature at this time, we reverse the district court and remand.

**I.     BACKGROUND**

We summarize the allegations set forth in the complaint as follows: On July 1, 2008, Local 244 and the City signed a collective bargaining agreement (Contract) providing the terms and conditions of employment for the next three fiscal years. Three months earlier, the Mayor presented the City Council with an executive

memorandum seeking approval of the Contract and its economic terms. The Council approved the Contract. The Contract called for a salary schedule that provided raises in each of the three years: five percent in fiscal year 2009, five percent in fiscal year 2010, and six percent in fiscal year 2011. The third raise was to take effect June 19, 2010, for fiscal year 2011, but the City, facing budget shortfalls during the recession, refused to pay the salary increases or to appropriate the money for them in fiscal year 2011.

In addition to answering the complaint, the City filed a motion to dismiss, arguing that the money to cover the raises could not be appropriated because of "severely declining revenues associated with an economic downturn." The district court granted the motion. It agreed with the City that "the economic components" of such a contract "are dependent upon the appropriation and availability of revenue." The court, citing the doctrine of separation of powers, concluded that "the judicial branch [does not have] the power to examine and review a legislative body's budget or decisions regarding tax increases to determine whether funds for the contractual obligation are actually available." *See* N.M. Const. art. III, § 1.

When the district court dismissed the complaint, it also denied two pending motions—Local 244's motion to compel discovery and the City's motion for summary judgment. Local 244 appeals the denial of its motion to compel discovery by the

district court, a denial that was premised on the court's decision to dismiss the case. The City elected not to appeal the denial of its motion for summary judgment. The district court treated the matter as a motion to dismiss rather than as a motion for summary judgment; it did not rely on matters outside the pleadings, preferring to decide the motion to dismiss on a question of law. *Cf. Dunn v. McFeeley*, 1999-NMCA-084, ¶ 17, 127 N.M. 513, 984 P.2d 760 (stating that we were "confident that the court and the parties all treated the motion as simply a motion to dismiss"). We therefore continue our analysis solely on the two issues raised by Local 244's appeal.

## II.   DISCUSSION

## A.   Motion to Dismiss

### 1.   Standard of Review

Whether the district court properly dismissed the claim under Rule 1-012(B)(6) NMRA is a question of law that we review de novo. *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. "Dismissal under the rule is a drastic remedy and is infrequently granted." *Rummel v. Edgemont Realty Partners, Ltd.*, 116 N.M. 23, 25, 859 P.2d 491, 493 (Ct. App. 1993). In reviewing a motion to dismiss under Rule 1-012(B)(6) "we take the well-pleaded facts alleged in the complaint as true and test the legal sufficiency of the claims[,]" *Envtl. Control, Inc. v. City of Santa Fe*, 2002-

4

NMCA-003, ¶ 6, 131 N.M. 450, 38 P.3d 891, and "conclusions of law are not admitted." *Duran v. N.M. Monitored Treatment Program*, 2000-NMCA-023, ¶ 19, 128 N.M. 659, 996 P.2d 922. In reviewing the district court's decision, "we accept as true all well-pleaded factual allegations in the complaint and resolve all doubts in favor of the complaint's sufficiency." *N.M. Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342. A motion to dismiss "is *only* proper when it appears that [the] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Valdez*, 2002-NMSC-028, ¶ 4 (internal quotation marks and citation omitted). "A complaint should not be dismissed unless there is a total failure to allege some matter essential to the relief sought." *Saylor v. Valles*, 2003-NMCA-037, ¶ 6, 133 N.M. 432, 63 P.3d 1152.

**2.      Sufficiency of the Complaint**

The City contends that the allegations in the complaint fail to state a claim for breach of contract for which relief can be granted. The City turns our attention to the annual budget process for fiscal year 2011, and states that it was "faced with severely declining revenues associated with an economic downturn." Thus, it argues, funds were not available to provide for salary increases in the third year of the agreement. The City relied on the Public Employee Bargaining Act, NMSA 1978, § 10-7E-17(E) (2003) (PEBA), and our decision in *International Association of Firefighters v. City*

*of Carlsbad*, 2009-NMCA-097, ¶ 13, 147 N.M. 6, 216 P.3d 256, for the proposition that economic terms of negotiated contracts are subject to legislative appropriation and the availability of funds.

Local 244 counters by arguing that the focus should be on 2008, the year the contract was approved by the City Council, not on fiscal year 2011.  It contends that no additional appropriation was necessary in the third year of the Contract because the City had already funded the salary increases in advance of when the City Council approved the executive memorandum outlining the economic terms of the Contract.

We turn to the sufficiency of Local 244's complaint and evaluate it under Rule 1-008(A)(2) NMRA.  "Each averment of a pleading shall be simple, concise[,] and direct.  No technical forms of pleading or motions are required."  Rule 1-008(E)(1).  Our standard is one of notice pleading.  *See Valles v. Silverman*, 2004-NMCA-019, ¶ 18, 135 N.M. 91, 84 P.3d 1056.  "'[G]eneral allegations of conduct are sufficient, as long as they show that the party is entitled to relief' and are sufficiently detailed to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested."  *Id.* (alteration in original) (quoting *Schmitz v. Smentowski*, 109 N.M. 386, 389-90, 785 P.2d 726, 729-30 (1990)).

Local 244's allegation that the City Council "funded" the pay raises in advance is set forth in its complaint, which states, in part:

> 10. The [C]ontract specifically provides effective June 19, 2010 salary increases for members under the CBA. . . .
>
> 11. The City of Albuquerque by and through the City Coun[cil] previously applied and funded the pay increase due June 19, 2010. . . .
>
> . . . .
>
> 18. All employees of the [City of Albuquerque Fire] Department are entitled to receive the pay increases negotiated in good faith by the parties and as funded by the City Coun[cil] in 2008.

Local 244 attached to the complaint as exhibits a copy of the front and back cover of the Contract; an April 7, 2008 executive memorandum from the Mayor's chief administrative officer to the City Council outlining the economic benefits included in the Contract; and a legislative history printout showing that the executive communication was approved by the City Council on April 21, 2008. The mayoral communication incorporates the City's ordinance governing multi-year agreements that requires the City Council to "approve the economic components" of a multi-year contract "through an executive communication and adopt a resolution providing an appropriation . . . to cover the cost of the contract." Albuquerque, N.M., Rev. Ordinances ch. 3, art. II, § 3-2-18 (2002).

The parties disagree on the key time frame at the center of the analysis. The City, in a memorandum in support of its motion to dismiss, and the district court, in its opinion and order granting the motion, both focused on the final year of the Contract and the question of the availability of funds to be appropriated at that time.

7

The district court cited PEBA for the proposition that the economic terms of an "agreement provision" in a collective bargaining agreement are subject to appropriation, *see* § 10-7E-17(E), and our opinion in *City of Carlsbad*, and concluded that the court did not have the power to review a legislative body's budget decisions. The court stated that the judicial branch is prevented by the New Mexico Constitution's separation of powers clause, Article III, Section 1, from peering into a municipality's legislative process to determine whether funds were available in fiscal year 2011 to provide for the salary increases.

By contrast, Local 244 urges us to place the focus on the 2008 approval of the Contract by the City Council, not on the City's financial condition during the third year of the Contract. The City counters that argument by contending that it is bound by the annual appropriation process and that it is restricted by the New Mexico Constitution and state statute in incurring debt that would be payable in a future fiscal year. *See* N.M. Const., art. IX, § 12; NMSA 1978, § 6-6-11 (1968) (the Bateman Act). We acknowledge the City's position. However, there are other avenues that were argued. For example, a municipality may set aside current tax receipts for future expenditures. *See Seward v. Bowers*, 37 N.M. 385, 385-86, 24 P.2d 253, 253 (1933) ("It is generally held that a limitation upon municipal indebtedness is not violated by an obligation which is payable out of a special fund, if the municipality is not liable

to pay the same out of its general funds should the special fund prove insufficient, and the transaction by which the indebtedness is incurred cannot in any event deplete the general resources of the municipality." (internal quotation marks and citation omitted)).  And it has been held that, when covering a multi-year financial obligation, debt is not created when the funds are available in advance.  *See Nat'l Civil Serv. League v. City of Santa Fe, N.M.*, 370 F. Supp. 1128, 1134 (D.N.M. 1973) (ruling that funds were "available and actually allocated" at the time of implementation of a service contract agreement, and the fact that those funds were later diverted to other expenses did not relieve the city from its contract obligation); *Cathey v. City of Hobbs*, 85 N.M. 1, 3, 508 P.2d 1298, 1300 (1973) ("It may be readily observed that this law makes void debts which are not and cannot be paid.  In this case, the debt was not paid but could have been.").  Nearly a century ago, our Supreme Court recognized that creating a "special fund" to cover future obligations that would not impact a county's general fund in future fiscal years provides a way to avoid the restrictions of the Bateman Act.  *See Capital City Bank v. Bd. of Comm'rs, Santa Fe County*, 27 N.M. 541, 543, 203 P. 535, 536 (1921); *see also City of Hobbs v. State ex rel. Reynolds*, 82 N.M. 102, 104, 476 P.2d 500, 502 (1970) ("If a special fund for a special purpose is created the Bateman Act is not applicable."); *Treloar v. County of Chaves*, 2001-NMCA-074, ¶ 25, 130 N.M. 794, 32 P.3d 803 (stating that "when a special fund

9

for a purpose is created, the Bateman Act is not applicable").

In the case before us, we look to the allegations contained in the complaint, more specifically to whether Local 244 adequately alleged that the funds were appropriated or approved in advance in 2008, binding the City to its contractual obligation. Local 244 alleged in its complaint that the pay raises mandated in the Contract were "funded by the City Coun[cil] in 2008." In responding to the City's motion to dismiss, Local 244 reiterated that the money for the raises was "approved and appropriated" by the City Council when it passed the resolution approving the Contract. Thus, it argues, there is no need for a court or arbitrator "to order the City to re-appropriate funds that are already approved and appropriated by the City in 2008." In other sections of its response to the motion to dismiss, Local 244 differently characterizes the actions of the City Council as "order[ing] to be appropriated" the "debt" it assumed.

We must determine whether the complaint is "sufficiently detailed" to give the City and the district court "a fair idea of the plaintiff's complaint and the relief requested." *Valles*, 2004-NMCA-019, ¶ 18. While the complaint does not use the word "appropriated" to describe the action of the City Council in April 2008, it uses similar terms to describe the action, such as "funded." The verb "fund" is defined as "[t]o furnish money to (an individual, entity, or venture), esp. to finance a particular

10

project[,]" *Black's Law Dictionary* 744 (9th ed. 2009), and "to provide and appropriate a fund or permanent revenue to pay the interest of[.]" *Webster's Third New Int'l Dictionary* 921 (1993).

The City contended at oral argument that, even if an appropriation was made in 2008, such an upfront funding by the City Council of three years' worth of Fire Department salaries is an implausible notion. Three years of salaries would cost about $200 million, the City argued, while the total annual City budget runs in the neighborhood of $475 million. The City also argued that such a commitment to fund salary increases in future fiscal years would run afoul of the Bateman Act and the New Mexico Constitution's limitations on creating debt beyond the current fiscal year.

The City, however, is making evidentiary arguments that are not part of our assessment in reviewing a motion to dismiss. *See Johnson v. Francke*, 105 N.M. 564, 565, 734 P.2d 804, 805 (Ct. App. 1987) (stating that dismissal of a claim in this manner is a legal, not evidentiary, determination). Our focus in assessing the sufficiency of Local 244's complaint remains not on the economic realities in 2010, but on the actions in 2008. "New Mexico adheres to the broad purposes of the Rules of Civil Procedure and construes the rules liberally, particularly as they apply to pleading." *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct. App. 1978).

11

We have previously addressed this issue and found a generalized complaint to be sufficient. In *Valles*, plaintiff neighbors of a proposed commercial development filed a complaint against Walmart alleging malicious abuse of process for filing against plaintiffs a Strategic Litigation Against Public Participation (SLAPP) suit. 2004-NMCA-019, ¶ 4. Plaintiffs alleged that Walmart "supported, encouraged[,] and funded litigation . . . in retaliation for [the plaintiffs'] petitioning activities." *Id.* Walmart argued that the plaintiffs failed to allege the requisite elements of such a claim, and the district court dismissed the suit. *See id.* ¶ 5. We reversed, concluding that the simple allegation that Walmart verbally encouraged the lawsuit and primarily funded it was sufficient to support the overall charge that Walmart "played an active role in initiating the underlying lawsuit by proving the funding without which the suit would not have proceeded." *Id.* ¶ 24.

In the case before us, we similarly abide by "our liberal standard of notice pleading," *id.*, and conclude that Local 244's complaint included allegations of an upfront appropriation "sufficiently detailed to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested." *Id.* ¶ 18. Therefore, we conclude that the district court erred in granting the City's motion to dismiss.

**B.      Motion to Compel Discovery**

We briefly address Local 244's motion to compel discovery. Because the

denial of that motion was based on the court's granting of the City's motion to dismiss, we reverse the denial of the motion to compel so that the district court may reconsider it on remand.

**C.      Limitations of the Opinion**

We point out the limitations of this Opinion by listing the issues that were raised during the briefing and oral argument, but that we do not decide today. While we conclude that Local 244 met the minimum requirements of New Mexico's liberal pleading rules, we do not rule on the applicability of Article IX, Section 12 of the New Mexico Constitution or of the Bateman Act. Thus, we do not consider whether those restrictions on municipal debt precluded the City Council from appropriating money in advance for the second and third years of the Contract. We also do not determine whether any approval in 2008 of funds for the subsequent fiscal years constituted "debt" as understood by our Constitution and the Bateman Act. Similarly, we do not assess whether the City Council's action in April 2008 constituted creation of a "special fund" as defined by New Mexico case law. Finally, we do not evaluate whether the doctrine of separation of powers prevents the judicial branch from ordering a legislative body to appropriate funds to cover the cost of the salary increases, because such a determination would be premature based on the status of the record in this case thus far.

**III. CONCLUSION**

For the foregoing reasons, we reverse the entry of the order of dismissal and the denial of the motion to compel, and we remand for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**J. MILES HANISEE, Judge**